George DANFORTH, Plaintiff–
Below Appellant,

v.

ACORN STRUCTURES, INC.,
a Massachusetts corporation,
Defendant–Below Appellee.

Supreme Court of Delaware.

Submitted: May 19, 1992.
Decided: June 18, 1992.
Rehearing Denied July 2, 1992.

John H. Newcomer, Jr. (argued), Bayard, Handelman & Murdoch, Wilmington, for appellant.

Paul Cottrell (argued), Berg, Tighe & Cottrell, P.A., Wilmington, for appellee.

Before VEASEY, C.J., HORSEY and MOORE, JJ.

VEASEY, Chief Justice:

This is an interlocutory appeal from a decision of the Superior Court granting summary judgment to defendant on the ground that the negligence claims of plaintiff are barred by the economic loss doctrine. The question presented is whether the economic loss doctrine applies under Delaware law based on the presence or absence of privity. Having carefully considered the policy reasons advanced in support of and in opposition to the application of the economic loss doctrine and for the reasons stated below, the ruling of the Superior Court that the economic loss doctrine applies under Delaware law, notwithstanding the presence of privity of contract, is affirmed.

### FACTS

Acorn Structures, Inc. ("Acorn"), appellee/defendant below, is a Massachusetts corporation engaged in selling building kits for houses. George Danforth ("Danforth"), appellant/plaintiff below, entered into a "Custom Design" contract with Acorn on August 13, 1979, whereby Acorn

agreed, for a sum of $1000, to develop an architectural design plan for plaintiff's house. The contract provided that if Danforth was interested in the design plan, Danforth could submit a purchase order for the Acorn "building package" materials. Danforth eventually did so. The contract further provided that the Acorn building materials were subject to a 2–year limited warranty.

Acorn does not engage in the construction of the buildings it designs. Therefore, Danforth contracted with a local builder, recommended by Acorn, for the actual construction of the house. Acorn provided training and on-site supervision to the local builder. The builder is not a party to this litigation.

Construction of Danforth's house was completed in 1981. Danforth contends that the design plan, which called for the use of ¾" insulation in the walls of the house, resulted in inadequate ventilation and allowed condensation to form within the walls of the house. In 1989, Danforth first discovered the resultant deterioration and rotting in and around the windows and door frames of the house and on the exterior siding of the house. Danforth sued Acorn, initially under a negligence theory of recovery, claiming damages in excess of $100,000 for corrective work and related repairs. The Superior Court granted summary judgment in favor of Acorn on the ground that the purely economic loss suffered by Danforth is not recoverable in a negligence action, absent either personal injury *or* damage to *other* property caused by accident, collision, or explosion, notwithstanding the presence of privity of contract between Danforth and Acorn. *Danforth v. Acorn Structures, Inc.,* Del.Super., C.A.

No. 90C–JN–30, slip op. at 18–19, 1991 WL 215658, Herlihy, J. (Aug. 27, 1991).

Danforth immediately filed a motion for reargument claiming that Acorn's negligence "in supplying defective plans that were utilized to construct the subsequently ordered building package" fell squarely within the exception to the economic loss doctrine recognized in *Guardian Construction Co. v. Tetra Tech Richardson,* Del.Super., 583 A.2d 1378 (1990).[1] Danforth subsequently amended his complaint setting forth three claims: negligence, breach of express and implied warranties, and negligent misrepresentation. Thereafter, the Superior Court denied Danforth's motion for reargument stating that his negligent misrepresentation claim did not fall within the negligent misrepresentation exception recognized in the *Guardian* case.[2] *Danforth v. Acorn Structures, Inc.,* Del.Super., C.A. No. 90C–JN–30, Herlihy, J., 1991 WL 269956 (Dec. 12, 1991) (ORDER).

## BACKGROUND

The economic loss doctrine is a judicially created doctrine that prohibits recovery in tort where a product has damaged only itself (*i.e.,* has not caused personal injury or damage to *other* property) and, the only losses suffered are economic in nature.[3] The rationale underlying the economic loss doctrine is best understood by considering the distinct functions served by tort law and contract law. *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 751, 435 N.E.2d 443, 448 (1982). "[T]he concept of duty is at the heart of the distinction drawn by the economic loss doctrine." *2314 Lincoln Park West Condo-*

---

1. In *Guardian,* the Superior Court recognized an exception to the economic loss doctrine in the surveyor error context under *Restatement (Second) of Torts* (1977), § 552 (Information Negligently Supplied for the Guidance of Others) by allowing recovery for purely economic loss even though there was no privity of contract.

2. We do not address the merits of this ruling since it is beyond the scope of the question presented in this interlocutory appeal.

3. Economic loss has been defined as "damages for inadequate value, *costs of repair and replacement of the defective product,* or consequent loss of profits—without any claim of personal injury or damage to *other* property," as well as "the diminution in value of the product because it is inferior in quality and does not work for the general purposes for which it is manufactured and sold." *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 752, 435 N.E.2d 443, 449 (1982) (emphasis added) (citations omitted).

*minium Assoc. v. Mann,* 136 Ill.2d 302, 144 Ill.Dec. 227, 232, 555 N.E.2d 346, 351 (1990). Products-liability tort law has evolved to protect the individual and his property from the risk of physical harm posed by dangerous products. Contract-warranty law has evolved to protect a different interest: *viz.,* the "bargained for expectations" of both contracting parties and other foreseeable users[4] who suffer loss when a product fails to meet the qualitative expectations of a consumer, *i.e.,* when a product is unfit for its intended use. *E.g., East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 872, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986); *Moorman,* 61 Ill.Dec. at 752, 435 N.E.2d at 449.

The seminal case that recognized and applied this distinction is the case of *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal. Rptr. 17, 23, 403 P.2d 145, 151 (1965). In *Seely,* plaintiff purchased a truck from a dealer. Upon taking possession, plaintiff found that it bounced so violently (an action known as "galloping") that it rendered the vehicle unusable in his business of heavy duty hauling. Subsequently, the brakes failed causing an accident that damaged only the truck. The plaintiff sued the manufacturer, *inter alia,* for breach of warranty seeking a return of the purchase price and profits lost. The Court recognized that "the law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods." *Id.* 45 Cal.Rptr. at 21, 403 P.2d at 149. [Warranty] "rules determine the quality of the product a manufacturer promises and thereby determine the quality he must deliver." *Id.* 45 Cal.Rptr. at 22, 403 P.2d at 150. In rejecting the contention that warranty law had been superseded by the doctrine of strict liability in tort, the court recognized that the doctrine of strict liability in tort "was designed, not to undermine the warranty provisions of the sales act or of the Uniform Commercial Code but, rather, to govern the distinct

problem of physical injury." *Id.* 45 Cal. Rptr. at 21, 403 P.2d at 149. The California Supreme Court stated:

> The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone.

*Seely,* 45 Cal.Rptr. at 23, 403 P.2d at 151 (citations omitted).

The United States Supreme Court has also considered the applicability of the economic loss doctrine in negligence actions brought pursuant to the Court's admiralty jurisdiction in the case of *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In *East River,* charterers of steamships brought suit against the manufacturer of turbine engines to recover the cost to repair the turbines and for lost income caused by alleged design and manufactur-

---

**4.** Under Delaware law, a seller's warranty whether express or implied extends to any *natural person* who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. 6 *Del.C.* § 2–318. A seller may not exclude or limit the operation of this section.

ing defects which caused the turbines in the supertankers to malfunction while on the high seas. In considering the approaches other courts have taken when determining whether economic loss is recoverable in tort, the Court stated:

> At one end of the spectrum, the case that created the majority land-based approach, *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965) (defective truck), held that preserving a proper role for the law of warranty precludes imposing tort liability if a defective product causes purely monetary harm. [Citations omitted]. . . .
>
> At the other end of the spectrum is the minority land-based approach, whose progenitor, *Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 66–67, 207 A.2d 305, 312–313 (1965) (marred carpeting), held that a manufacturer's duty to make non-defective products encompassed injury to the product itself, whether or not the defect created an unreasonable risk of harm. [Citation omitted]. . . .
>
> Between the two poles fall a number of cases that would permit a products-liability action under certain circumstances when a product injures only itself. These cases attempt to differentiate between the "disappointed users . . . and the endangered ones," *Russell v. Ford Motor Co.*, 281 Or. 587, 595, 575 P.2d 1383, 1387 (1978), and permit only the latter to sue in tort. . . .
>
> We find the intermediate and minority land-based positions unsatisfactory. the intermediate positions, which essentially turn on the degree of risk, are too indeterminate to enable manufacturers easily to structure their business behavior. Nor do we find persuasive a distinction that rests on the manner in which the product is injured. We realize that the damage may be qualitative, occurring through gradual deterioration or internal breakage. Or it may be calamitous. Compare *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976), with *Cloud v. Kit Mfg. Co.*, 563 P.2d 248, 251 (Alaska 1977). But either way, since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law. See E. Farnsworth, Contracts § 12.8, pp. 839–840 (1982).

*East River*, 476 U.S. 858, 868–70, 106 S.Ct. 2295, 2300–02 (1986) (footnotes omitted).

The *East River* Court adopted an approach similar to *Seely* and ruled "that a manufacturer in a commercial relationship has no duty under either a negligence or a strict products-liability theory to prevent a product from injuring itself." *Id.* at 871, 106 S.Ct. at 2302 (footnote omitted). The Court recognized that tort concerns with safety are reduced and the policy reasons for imposing a tort duty of care are weak when a product injures only itself. Therefore, the Court reasoned that contract-warranty law is the appropriate remedy in such commercial controversies because the parties, presumably of equal bargaining power, are free to set the terms of their own agreement: the manufacturer can limit its liability by disclaiming warranties while the purchaser can pay less for the product in exchange. *Id.* at 871–73, 106 S.Ct. at 2302–03.

Moreover, in *East River*, the Court recognized that a warranty action, unlike a tort products liability action, has built-in limitations on liability based upon the terms of the parties' underlying contract and Code requirements of privity and foreseeability. *Id.* at 874, 106 S.Ct. at 2303–04. *See also* 6 *Del.C.* § 2–318 (limiting warranty liability to third party beneficiaries of the warranties in the underlying contract for sale); § 2–715(2)(a) (only foreseeable consequential damages, *i.e.*, lost profits, recoverable). In concluding that products-liability law, unlike warranty law, fails adequately to limit the vast potential liability of a manufacturer to persons downstream if they were permitted to recover economic loss, the Court stated:

> Permitting recovery for all foreseeable claims for purely economic loss could

make a manufacturer liable for vast sums. It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product. In this case, if the charterers—already one step removed from the transaction—were permitted to recover for their economic losses, then the companies that subchartered the ships might claim their economic losses from the delays, and the charterers' customers also might claim their economic losses, and so on. "The law does not spread its protection so far." *Robbins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309, 48 S.Ct. 134, 135, 72 L.Ed. 290 (1927).

*East River*, 476 U.S. at 874, 106 S.Ct. at 2304.

## ANALYSIS

■ We are persuaded by the reasoning of the United States Supreme Court in the *East River* case and, for the additional reasons stated below, conclude that, under Delaware tort law, the economic loss doctrine is a complete bar to the recovery of economic loss caused by qualitatively defective products, notwithstanding the presence of privity of contract.

We begin by considering Delaware precedent which has addressed the narrow question presented by this interlocutory appeal: "whether the economic loss doctrine applies under Delaware law based on the presence or absence of privity." The parties agree that the seminal Delaware case applying the economic loss doctrine is *Crowell Corp. v. Topkis Construction Co.*, Del.Super., 280 A.2d 730 (1971). In *Crowell*, a building owner sued the architect, general contractor, and various subcontractors in tort for damages arising from alleged construction defects in the building. The owner, who was not in privity of contract with the subcontractors, alleged that the subcontractors "negligently breached the provisions of their contract with the general contractor and failed to do a workmanlike job thereby creating a defective building which was dangerous." *Id.* at 731. The damages claimed by the owner consisted of the costs incurred to correct the alleged

construction defects. The Superior Court granted summary judgment in favor of the subcontractors on the grounds that "[t]he great weight of authority does not yet permit tort recovery under the circumstances here present [mere pecuniary loss] in the absence of physical injury to a person [or other property damage caused by] dramatic incident such as accident, collapse or explosion." *Crowell*, 280 A.2d at 732.

The "leading case" cited in *Crowell* in support of the economic loss rule was *Trans World Airlines, Inc. v. Curtiss–Wright Corp.*, 1 Misc.2d 477, 148 N.Y.S.2d 284 (1955). In that case, Trans World Airlines, Inc. ("TWA") sought damages under a negligence theory from Curtiss–Wright Corporation ("Curtiss–Wright"), a manufacturer of airplane engines, for the cost of repairing and replacing certain defective aircraft engines. These engines had been incorporated into airplanes TWA had purchased from Lockheed Aircraft Corporation ("Lockheed"). TWA had also purchased allegedly defective engines directly from Curtiss–Wright. The court granted judgment on the pleadings in favor of Curtiss–Wright on the ground that the economic loss doctrine barred TWA's claims as to the defective engines installed on the airplanes purchased from Lockheed because: (a) there was no privity of contract between TWA and Curtiss–Wright, and (b) there was no property damage caused by accident or other calamitous event. As to the engines purchased directly from Curtiss–Wright, however, the court stated:

> ... TWA would have a sufficiently pleaded cause of action either in negligence or breach of warranty, at its choice, because privity of contract does exist as to them.

*Trans World Airlines*, 148 N.Y.S.2d at 291. Although Danforth relies on this language from the *Trans World Airlines* case to support the contention that economic loss is recoverable under Delaware tort law when privity of contract exists, this specific language was not relied upon or cited by the Superior Court in *Crowell*. Moreover, a close reading of *Crowell* reveals that it does not stand for the proposition that eco-

nomic loss is recoverable in tort when privity of contract exists. Rather, in *Crowell*, the Superior Court simply ruled that economic loss is not recoverable absent personal injury or other property damage caused by a dramatic incident such as accident, collapse or explosion. *But see East River*, 476 U.S. at 870, 106 S.Ct. at 2302 (rejecting any distinction resting on the manner a product is injured; damage may be by gradual deterioration or by calamitous event, but either way the loss is purely economic).

After *Crowell*, but still in the 1970s, two decisions of this Court addressed the question whether economic loss is recoverable in construction cases. Danforth claims the first of these two decisions, *Oliver B. Cannon & Sons, Inc. v. Dorr–Oliver, Inc.*, Del.Supr., 336 A.2d 211 (1975), buttresses his interpretation of *Crowell*. In *Cannon*, the Barcroft Company entered into an agreement with Dorr–Oliver, a general contractor, to design and construct a plant for the production of magnesium hydroxide paste on Barcroft's property. The general contractor entered into an agreement with a painting subcontractor, Oliver B. Cannon & Sons, Inc., to prepare and paint the interior linings of 14 chemical process tanks owned by Barcroft. Within a month after the subcontractor finished painting the tanks, the lining of one of the tanks began to show deterioration. The owner of the tanks claimed that the subcontractor was contractually obligated to repair the tanks and that the lining failures were caused by the subcontractor's negligent workmanship.

The subcontractor moved for summary judgment on the owner's breach of contract and negligence claims. As to the breach of contact claim, the trial court denied summary judgment on the ground that a genuine issue of material fact existed regarding the third-party creditor beneficiary status of the owner as to the contract between the general contractor and the subcontractor. As to the negligence claim, while questioning the apparent preservation of the citadel of privity in the *Crowell* case, the trial court ruled that the owner had suffered more than mere economic loss because "ar-guably" there had been an "accident in the basic sense that there was in fact an immediate physical injury to the storage tanks not caused by normal wear and tear." *Oliver B. Cannon & Sons, Inc. v. Dorr–Oliver, Inc.*, Del.Super., 312 A.2d 322, 329 (1973) (footnote omitted).

On appeal, this Court affirmed the trial court's ruling that the subcontractor was liable *in contract* to "any parties damaged" and that the owner was entitled to protection under the contract as a third-party creditor beneficiary. *Cannon*, Del. Supr., 336 A.2d at 215. In a footnote in this decision, however, the Court stated:

6. The decision as to [the owner's] status and its privity of contract obviates the need to consider arguments of the parties relating to *Crowell Corp. v. Topkis Construction Co.*, Del.Supr., 280 A.2d 730 (1971). In ruling against the maintenance of a tort action there, the *Crowell* court found no contractual relationship between owner and subcontractor. On remand the parties are free to argue a tortious basis for damages in any way that is not inconsistent with this opinion.

*Cannon*, Del.Supr., 336 A.2d at 216 n. 6. Although Danforth relies on this footnote to support his contention that economic loss is recoverable under Delaware tort law when privity of contract exists, the language is dicta given the Court's actual holding. Moreover, as the trial court recognized, since the owner suffered other "physical injury to property" (*i.e.*, the storage tanks), the economic loss doctrine, notwithstanding the presence of privity of contract, was not and could not properly be the basis for the recovery allowed.

The second decision by this Court which addressed the question presented in this case is *Seiler v. Levitz Furniture Co.*, Del.Supr., 367 A.2d 999 (1976). In that case, without addressing *Crowell*, the Court ruled that privity of contract was not required for a shopping center tenant to maintain a negligence action for economic loss against an architect-engineer for design defects and other acts of negligence where the tenant's store suffered other

property damage during two major floods. *Id.* at 1007 (citing *Martin v. Ryder Truck Rental, Inc.*, Del.Supr., 353 A.2d 581 (1976) (privity of contract not required to maintain a strict products-liability action in tort). The Court also ruled, however, that the architect was accountable to the tenant on third-party creditor beneficiary principles. *Id.* The Court stated:

> In our view, Seiler's obligation to Levitz for defects in the air-conditioning system is more properly based upon third-party beneficiary principles than upon tort, see *Cannon v. Dorr–Oliver, supra,* but the result is the same. And there is evidence to support the Court's rulings.

*Id.* at 1010. Since *Seiler,* like *Cannon,* also involved damage to other property, and not mere economic loss, the economic loss doctrine was not and could not properly be the basis for the recovery allowed. Therefore, although neither case is controlling on the question presented in this case, we note that both decisions are consistent with the rationale in *East River* since each involved other property damage.

We recognize that one benefit of a privity of contract standing requirement is that it acts as a limitation on the potential tort liability of a commercial seller. The number of persons to whom a commercial seller would owe a duty to protect against the risk that its product, if defective, might damage itself, is reduced from a class of all foreseeable users of its products to a limited and knowable class of those users with whom the seller is in contractual privity. We are more persuaded, however, by the view that contract notions of privity are irrelevant to the question whether a commercial seller owes a duty to foreseeable users of its products, under tort law, to protect against the risk that its product, if defective, might damage only itself. *See Clark v. International Harvester Co.,* 99 Idaho 326, 581 P.2d 784, 794 (1978) ("Rather than obscure fundamental tort concepts with contract notions of privity, we believe that it is analytically more useful to focus on the precise duty of care that the law of negligence, not the law of contract or an agreement of the parties, has imposed on the defendant ..."); *e.g., Miller v. U.S.*

*Steel Corp.,* 902 F.2d 573, 575 (7th Cir. 1990) ("privity of contract is not an element of the economic loss doctrine").

Rather, we find that the economic loss doctrine is especially suited to cases where privity of contract does exist. In such cases, it is presumed that the parties to the transaction have allocated the risk of product nonperformance through the bargaining process. In *Sullivan Industries, Inc. v. Double Seal Glass Co., Inc.,* 192 Mich. App. 333, 480 N.W.2d 623 (1991), the Court stated:

> The reliance on privity notions to ascertain whether tort or commercial law applies serves only to blur the distinction between, and the applicability of, commercial law and tort law to economic losses. Instead, a more logical and conceptually manageable approach is to determine the type of loss a plaintiff is alleging. Allegations of only economic loss do not implicate tort law concerns with safety, but do implicate commercial law concerns with economic expectations. Accordingly, the latter concerns must govern, and the law designed to define relationships among commercial persons and enacted by the legislature to create and limit liability between them, the Uniform Commercial Code, should be applied. In this situation, there is no rationale for the court to shift the loss between the parties by going outside the Code.

*Id.* 480 N.W.2d at 629 (citations omitted). Therefore, we hold that the existence of privity of contract is not an exception to the application of the economic loss doctrine in Delaware.

■ Finally, for essentially the same reasons, we are unable to accept Danforth's contention that Delaware should recognize an exception to the economic loss doctrine by allowing individual consumers, as distinguished from commercial buyers, to recover for economic loss based upon the alleged inherently unequal bargaining power between individual consumers and commercial sellers. Such a rule would defeat the legislative intent of the General Assembly in enacting Article 2 of the Uniform Com-

mercial Code, as codified at 6 *Del.C.* 2–101 *et seq.*, as the complete framework of the rights and remedies available to parties to a sale of goods contract. *See Cline v. Prowler Industries of Maryland Inc.*, Del. Supr., 418 A.2d 968, 976–77 (1980); *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 23, 403 P.2d 145, 151 (1965) ("The law of warranty is not limited to parties of equal bargaining position."). Article 2 confers broad standing to raise warranty claims for economic loss on product users in privity of contract with the commercial seller and on product users who qualify as third-party beneficiaries under 6 *Del.C.* § 2–318. Therefore, we see no reason to extend tort law into an area adequately governed by warranty law. Otherwise, "contract law would drown in a sea of tort." *East River*, 476 U.S. at 866, 106 S.Ct. at 2300 (citing G. Gilmore, *The Death of a Contract* 87–94 (1974)).

## CONCLUSION

For the foregoing reasons, we hold that purely economic loss caused by qualitatively defective products is not recoverable in tort under Delaware law, notwithstanding the presence of privity of contract.[5] Therefore, the order of the Superior Court dated August 27, 1991, granting Acorn's motion for summary judgment as to Danforth's negligence claim is AFFIRMED, and the case is REMANDED for further proceedings consistent with this opinion.

---

5. This decision is not intended to address, and does not extend to, the question whether the economic loss doctrine bars recovery of eco-nomic loss caused by professional malpractice in tort.