**EAGLE TRAFFIC CONTROL, Plaintiff,**

v.

**ADDCO, Defendant.**

No. 94–CV–7363.

United States District Court,
E.D. Pennsylvania.

April 12, 1995.

Stephen E. Moore, Lavin, Coleman, Finarelli & Gray, Philadelphia, PA, for plaintiff.

Joseph M. DeMarco, March, Hurwitz, DeMarco & Mitchell, Media, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This diversity case has been brought before the Court by motion of the defendant, Addco, which seeks dismissal of Counts III, IV and VI of the plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). Further, Addco seeks the dismissal of both Count V to the extent it contains a claim for negligent misrepresentation and Plaintiff's claims for punitive damages. For the reasons that follow, the defendant's motion to dismiss will be granted in part.

## I. HISTORY OF THE CASE

The issue for the Court is whether Plaintiff has stated a claim on which relief can be granted; thus, we must take as true all of the factual allegations made in the complaint. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994). Accordingly, the facts giving rise to this lawsuit are as follows. The plaintiff in this case is Eagle Traffic Control ("Eagle"), a Pennsylvania corporation in the business of providing safety equipment to highway work sites pursuant to various contracts. In the course of performing one of these contracts, Eagle sought to purchase a number of flip disk boards and a light emitting diode ("LED") board. A flip disk board is a diesel and battery powered sign that displays messages of warning or instruction to motorists near worksites, and an LED board flashes programmed messages to motorists.

Addco submitted a bid in which it assured Eagle that the diesel fuel consumption rate on the flip disk boards was reasonable and that the products were generally free from defect. Relying on this information, Eagle purchased 15 flip disk boards and one LED board from Addco, which were subsequently deployed at a worksite in Delaware. The products were covered by a two year warranty. Soon after the signs were placed in operation, however, Eagle discovered that the fuel consumption rate was significantly higher than promised, and that the signs frequently malfunctioned. As a result of these difficulties, Eagle claims losses in the form of: (1) fuel costs significantly higher than expected, (2) lost per diem charges for board operation, (3) the cost of replacing an LED board, (4) maintenance costs that should have been covered by the warranty, and (5) damage to its reputation.

On December 6, 1994, Eagle initiated the instant action by filing a complaint in this Court pursuant to our diversity jurisdiction. *See* 28 U.S.C. § 1332. The complaint contains six counts, four of which are at issue here.[1] In Count III, Eagle alleges that Addco was negligent in its manufacture of the products, causing harm to Eagle as well as potential harm to persons traveling in the vicinity of the affected worksites. The fourth count contains the assertion that Addco is liable under a strict liability theory. In Count V, Eagle alleges that Addco made knowing or negligent misrepresentations regarding the characteristics and capabilities of the products. Finally, in Count VI, the plaintiff seeks compensatory and punitive damages for Addco's alleged disparagement of the name of Eagle Traffic Control. Addco has since filed the instant motion to dismiss, in which it argues (1) that the claims for negligence, strict liability, and negligent misrepresentation are barred by the economic loss rule; (2) that Eagle has failed to state a claim on which relief can be granted with respect to its trade disparagement claim; and (3) that Eagle has failed to state a basis for the imposition of punitive damages. With this background in mind, we turn now to the merits of the parties' arguments.

## II. DISCUSSION

### A. Standards Applicable to a Rule 12(b)(6) Motion

In considering a motion to dismiss pursuant to Rule 12(b)(6), the complaint's allega-

---

1. Addco does not seek the dismissal of the first two counts, in which Eagle seeks relief under the theories of breach of contract and breach of warranty, respectively.

tions must be construed favorably to the pleader. The court must accept as true all of the plaintiff's factual allegations and draw from them all reasonable inferences. *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir. 1991) (citations omitted). Thus, the court will grant a Rule 12(b)(6) motion only if the non-moving party cannot prevail legally under the set of facts alleged. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). In deciding this motion, this Court will apply these standards to each of the disputed claims in Eagle's complaint.

## B. *Negligence, Strict Liability, and Negligent Misrepresentation Claims*

As we noted above, Eagle has brought claims for negligence, strict liability and negligent misrepresentation. Under the law of both Pennsylvania and Delaware,[2] there is no recovery under the tort theories of negligence, strict liability or negligent misrepresentation "where a product malfunctions because of an alleged defect in the article and causes damage to the product itself and consequential damages in the nature of cost of repair or replacement or lost profits, but the malfunction causes no personal injury and no injury to any other property of the plaintiff." *Lower Lake Dock Co. v. Messinger Bearing Corp.,* 395 Pa.Super. 456, 577 A.2d 631, 634 (1990) (citing *REM Coal Co. v. Clark Equipment Co.,* 386 Pa.Super. 401, 563 A.2d 128 (1989) (en banc)); *see Danforth v. Acorn Structures, Inc.,* 608 A.2d 1194, 1198 (Del.1992) (noting that "under Delaware tort law, the economic loss doctrine is a complete bar to the recovery of economic loss caused by qualitatively defective products"); *Palco Linings, Inc. v. Pavex, Inc.,* 755 F.Supp. 1269, 1273–74 (M.D.Pa.1990) (under Pennsylvania law, no action permitted for negligent misrepresentation where losses claimed are purely economic).

These cases draw their strength from the United States Supreme Court's decision in *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In *East River,* the Court held that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id.* at 871, 106 S.Ct. at 2302. The Court reasoned that the impetus behind the application of tort law is significantly abated where there has not been an allegation of harm to person or property, since tort law is concerned primarily with safety. *Id.* In other words, tort law is not intended to compensate parties for losses suffered as a result of a breach of a duty assumed pursuant to an agreement, but is instead designed to protect persons and property from injury. On the other hand, the Court noted that contract law, and warranty law in particular, is better suited to disputes involving claims where defective products cause purely economic harm because it allows the parties to set the terms of their agreements. *Id.* at 872–73, 106 S.Ct. at 2302–03. Thus, the Court concluded that no negligence or strict products liability claim could lie where the only harm alleged is economic loss.

As we noted above, Eagle alleges that it incurred losses in the form of higher fuel costs, lost per diem charges, replacement and maintenance costs, and damage to its reputation, all of which fit within the ambit of economic loss. *See Lucker Mfg. v. Milwaukee Steel Foundry,* 777 F.Supp. 413, 416 (E.D.Pa.1991) (loss of goodwill is an economic loss for which there can be no recovery in tort under the economic loss rule); *Lower Lake Dock,* 577 A.2d at 634 (economic loss includes "cost of repair or replacement or lost profits"). Thus, it would appear that Eagle's claims sounding in tort must be dismissed. In an effort to avoid this precedent, however, Eagle cites the Delaware Superior Court's decision in *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.,* 583 A.2d 1378 (Del.Super.Ct.1990), for the proposition that courts in Delaware recognize an exception to the economic loss rule. The defendant in *Guardian* was a design engineer that had been hired by the state to provide specifica-

---

**2.** There is a dispute as to the proper law to apply in deciding the legal issues presented by this motion. Addco argues that Pennsylvania law applies, while Eagle urges us to apply the law of Delaware. We need not decide which state's law applies, however, because of our conclusion that the same result obtains under either body of law.

tions relating to a construction project. A general contractor, one of the plaintiffs, used the specifications to prepare the bid and to subcontract some of the work. It was later determined that the specifications were faulty, resulting in added costs to the plaintiffs. In allowing the suit to go forward, the court adopted the Restatement (Second) of Torts § 552 (1977)[3] and held as follows:

> [I]f, *in the course of its business,* [Defendant] negligently obtained and communicated incorrect information specifically known and intended to be for the guidance of Plaintiffs, and if it is specifically known and intended that Plaintiffs would rely in calculating their project bids on that information, and if Plaintiffs rely thereon to their detriment, then [Defendant] should be liable for foreseeable economic losses sustained by Plaintiffs regardless of whether privity of contract exists.

*Id.* at 1386 (emphasis added).

While this language, at first blush, appears to give sanction to the type of claims presented here, we are convinced that the Delaware courts, if confronted with the facts before us, would invoke the economic loss doctrine and not permit the claims to go forward. In the first instance, the *Guardian* court was careful to add that its intention was not "to state a general rule which applies to all professions in all situations." *Id.* Indeed, the notion that the holding should apply to only those entities that are hired specifically for the purpose of providing information, and then do so negligently, is suggested by both facts of the case and the language the court used to explain its rationale, emphasized above. *See Palco Linings,* 755 F.Supp. at 1274 ("The Restatement, and the cases following it, limit tort liability to those *in the business* of selling information on which its customers rely upon in taking additional action."). In the instant case, Addco was not retained specifically to provide information, as was the defendant in *Guardian,* but was instead hired

to provide equipment which allegedly did not perform as promised.

Moreover, the *Guardian* court was confronted with a situation in which there was no privity between the plaintiff and defendant; thus the plaintiff had no remedy in contract. Such is not the case here. As we have discussed above, Eagle has properly pleaded contract and warranty claims which adequately address the harm it has incurred. *See Danforth,* 608 A.2d at 1200 ("[W]e find that the economic loss doctrine is especially suited to cases where privity of contract does exist."). Finally, we note that our conclusion is buttressed by the Delaware Supreme Court's later decision in *Danforth,* in which the court held that the plaintiff could not recover in tort where it claimed only economic loss, and noted that the *Guardian* decision was limited to "the surveyor error context." *Danforth,* 608 A.2d at 1195 n. 1. Thus, we conclude that the facts set forth in Eagle's complaint do not fit within the exception articulated in *Guardian,* but are instead governed by the economic loss doctrine. Accordingly, we must grant Addco's motion to dismiss as it applies to Count III, Count IV, and Count V to the extent that it sets forth a claim for negligent misrepresentation.

### C. *Trade Disparagement Claim*

■ In Count VI, Eagle purports to state a claim for "trade disparagement," in which it alleges that "Addco has maligned the name and the efforts of Eagle Traffic Control to various contractors on the Delaware project and to the Delaware Department of Transportation." Compl. para. 54. Both Delaware and Pennsylvania follow the Restatement view regarding the tort of trade disparagement. *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 924 (3d Cir.) (citing *Menefee v. Columbia Broadcasting Sys., Inc.,* 458 Pa. 46, 329 A.2d 216, 220 (1974)), *cert. denied,* 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990); *Ramada Inns,*

---

**3.** Section 552, titled "Information Negligently Supplied for the Guidance of Others," provides, in relevant part, as follows:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Inc. v. Dow Jones & Co.,* 543 A.2d 313, 328–29 (Del.Super.Ct.1987). Accordingly, a disparagement cause of action arises when one publishes a statement with the intent to cast doubt upon the existence, extent or quality of another's land, chattels, or intangible things, and the statement is so understood by its recipient. *U.S. Healthcare,* 898 F.2d at 924 (citing *Menefee,* 329 A.2d at 220).

█ An action for trade disparagement is designed to compensate a vendor for pecuniary loss incurred as a result of slurs affecting the marketability of his wares. *Id.; Zerpol Corp. v. DMP Corp.,* 561 F.Supp. 404, 408 (E.D.Pa.1983); *Ramada Inns,* 543 A.2d at 328–29. Thus, in order for Eagle to recover under a trade disparagement theory, it must plead and prove that 1) the disparaging statement is untrue; 2) the publisher intends for the statement to cause pecuniary loss or reasonably should recognize that pecuniary loss will result; 3) pecuniary loss does result; and 4) the publisher either knows the statement is untrue or acts in reckless disregard of its truth. *Zerpol,* 561 F.Supp. at 409 (citing Restatement (Second) of Torts § 623A (1977)); *U.S. Healthcare,* 898 F.2d at 924 (citing *Menefee,* 329 A.2d at 220).

█ While the trade disparagement tort is similar to the tort of defamation, there are important differences which are relevant to the instant discussion. The key distinction is that defamation is designed not to compensate for some direct pecuniary loss flowing from a disparaging statement, but instead "to protect an entity's interest in character and reputation." *U.S. Healthcare,* 898 F.2d at 924. Thus, the *Zerpol* court has noted that the elements of trade disparagement "are much more stringent than those for defamation," and the defamation plaintiff need not plead and prove special damages, as it must in the trade disparagement context. *Zerpol,* 561 F.Supp. at 409; *Testing Sys.,* 251 F.Supp. at 290–91; *see Testing Sys., Inc. v. Magnaflux Corp.,* 251 F.Supp. 286, 290–91 (E.D.Pa.1966) (under liberal pleading rules, plaintiff must set forth special damages in the complaint to recover under trade disparagement theory).

█ Upon application of the standard to Eagle's complaint, we conclude that the claim set forth under Count VI cannot survive this motion as pleaded. First, while Eagle now argues that the alleged statements are slanderous per se, obviating the need to plead and prove damages, it is clear that Count VI purports to state a claim under the trade disparagement theory. In reaching this conclusion, we note that Count VI is titled "trade disparagement," and that it contains a request for "judgment in [Eagle's] favor on the count of trade disparagement in such an amount as to compensate Eagle Traffic control for the disparagement...." Compl. at p. 9. Further, Eagle has not set forth in any detail the nature of the allegedly disparaging statements or the details regarding the nature and extent of any pecuniary loss resulting therefrom. Accordingly, we must dismiss Count VI of the complaint. If Eagle is prepared to plead with specificity the nature of pecuniary loss incurred as a result of the allegedly disparaging statement, however, it will be granted leave to amend its complaint within ten days of the date of the attached order.

### D. *Punitive Damages*

Addco finally argues that Eagle's claims for punitive damages contained in Counts V and VI should be dismissed because Eagle has failed to state a basis for their imposition. Since our order will allow Eagle to amend its complaint with respect to Count VI, we decline to rule on the issue of whether Eagle has set forth a basis for punitive damages at this time. We will revisit the issue, however, after either the amended complaint has been filed or the time in which the amended complaint may be filed has elapsed, upon motion of the defendant.

### III. *CONCLUSION*

For the reasons stated above, Addco's motion to dismiss Counts III, IV and VI will be granted. Eagle will be granted leave to amend its complaint with respect to Count VI. Finally, Count V will be dismissed to the extent it purports to state a claim for negligent misrepresentation.

An appropriate order follows.

*ORDER*

AND NOW, this 12th day of April, 1995, upon consideration of the Defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), it is hereby ORDERED, for the reasons set forth in the preceding memorandum, that

1. Counts III, IV and VI are hereby DISMISSED. Eagle is granted leave to file an amended complaint with respect to Count VI within ten (10) days of the date of this Order; and

2. Count V is hereby DISMISSED to the extent it purports to state a claim for negligent misrepresentation.