**BELL HELICOPTER TEXTRON, INC., a Delaware corporation, Plaintiff,**

v.

**TRIDAIR HELICOPTERS, INC., a California corporation, and Gemini St Development, L.P., a California limited partnership, Defendants.**

Civil Action No. 97–98 MMS.

United States District Court, D. Delaware.

Oct. 20, 1997.

Stuart M. Grant, and Herbert W. Mondros, of Grant & Eisenhofer, P.A., Wilmington, Delaware, for plaintiff.

Jack B. Blumenfeld, and Karen Jacobs Louden, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, of Counsel David T. Miyamoto, Vincent Belusko, Jennifer Tsao, of Graham & James, Los Angeles, California, for defendants.

## *OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

## I. INTRODUCTION

This action was brought by plaintiff corporation, Bell Helicopter Textron, Inc. ("Bell"), against defendant corporation Tridair Helicopter, Inc. ("Tridair") and defendant limited partnership, Gemini ST Development, L.P. ("Gemini").[1] Bell initially sought a declaratory judgment that it did not misappropriate any trade secrets from Tridair. Complaint, Docket Item ("D.I.") 1. Thereafter, Bell amended its complaint to seek an additional declaration that Bell had not breached the License Agreements it had with Tridair. Amended Complaint, D.I. 24. Tridair answered the amended complaint and asserted a counterclaim against Bell for breach of the License Agreement (Count I), breach of the

covenant of good faith and fair dealing (Count II), misappropriation of trade secrets under the Delaware Uniform Trade Secrets Act, DEL. CODE ANN. tit. 6, § 2001 et seq. (1993) ("DUTSA") (Count III), and common law misappropriation of trade secrets (Count IV). Answer and Counterclaim, D.I. 25. Plaintiff invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332.

Bell has moved to dismiss Counterclaims III and IV pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Tridair voluntarily dismissed Counterclaim Count IV, the common law trade secret claim. For the reasons stated below, the Court will deny Bell's motion to dismiss Count III of the Counterclaim.

## II. FACTUAL BACKGROUND

On January 22, 1993, Bell and Tridair executed a license agreement ("1993 Agreement") in which Tridair granted Bell certain rights to information relating to kits designed and manufactured by Tridair which can convert certain Bell single engine helicopters into twin engine helicopters. D.I. 24, at ¶ 1 and D.I. 25, at ¶ 47. In exchange for these rights, Bell agreed to pay Tridair $60,000.00 for each new Bell helicopter manufactured using Tridair's conversion kit. D.I. 24, at ¶ 1 and D.I. 25, at ¶ 47. According to the terms of the 1993 Agreement, Bell agreed and acknowledged that the technical data it received from Tridair was the proprietary information of Tridair and that Bell would maintain its confidentiality. D.I. 25, at ¶ 47.

On December 20, 1994, Bell and Tridair entered into another licensing agreement (" 1994 Agreement") whereby Tridair granted a license to Bell to utilize the technical data previously received to manufacture, have manufactured, use, sell and lease a twin engine Bell Model 407L(T) helicopters. Bell agreed to pay Tridair a royalty of $54,000.00 for each 407L(T) helicopter sold by Bell. D.I. 24, at ¶ 1 and D.I. 25, at ¶ 51.

---

1. Although Gemini is named in the complaint as a co-defendant, Tridair, as the general partner, controls Gemini. Because no separate claims are asserted against Gemini, only Tridair will be referenced as the defendant.

The parties agree conversion of Bell's single engine helicopter to twin engine helicopters was not a successful commercial venture. D.I. 24, at ¶ 2 and D.I. 25, at ¶ 2. Moreover, Bell scrapped plans to manufacture and sell more of the Bell Model 407L(T) because of high costs and consequent lack of market demand. D.I. 24, at ¶ 2. Instead, Bell began developing its own helicopter, allegedly using Tridair's technical data, in partnership with another company, Samsung. D.I. 25, at ¶¶ 62,63. Tridair asserts Bell used the technical data revealed pursuant to the 1993 and 1994 Agreements in order to build this new helicopter in spite of lack of a license to do so. *Id.* at ¶ 56.

Although Bell and Tridair spent almost six months attempting to resolve this dispute pursuant to the provisions of the 1994 and 1993 Agreements, such attempts proved to be unsuccessful. D.I. 24, at ¶ 4. This lawsuit followed.

### III. STANDARD OF REVIEW FOR DISMISSAL UNDER RULE 12(b)(6)

Bell has moved to dismiss Count III of the counterclaim pursuant to Fed.R.Civ.P. 12(b)(6). The purpose of a motion to dismiss is not to resolve disputed facts or to decide the merits of the case, but instead to test the sufficiency of a complaint. *See Panhandle Eastern Pipe Line Co. v. Utilicorp United Inc.*, 928 F.Supp. 466, 469–70 (D.Del.1996) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)) (purpose of 12(b)(6) "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"). When considering a 12(b)(6) motion, the Court should "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994). Only if the plaintiff can prove no ·set of facts in support of its claim which would entitle it to relief, should the Court dismiss the complaint. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994). Not surprisingly, the moving party has the burden of persuasion under this standard. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991).

### IV. DISCUSSION

Bell has presented three arguments why the state statutory trade secrets misappropriation claim should be dismissed. First, Bell asserts that Tridair did not allege that Bell had "wrongfully gained access" to the trade secret. Second, DUTSA does not apply because there was no duty to maintain the secrecy of the information involved. Finally, the economic loss doctrine bars Tridair from bringing this tort claim. These arguments will be discussed seriatim.

### A. Whether "Wrongfully Gained Access" Must Be Pled

Bell contends that under *Cabot Corp. v. Fansteel Inc.*, C.A. No. 10502, 1990 WL 181960, at *1 (Del.Ch. November 21, 1990), Tridair must specifically allege, "defendant has *wrongfully gained access* to the secret and has misappropriated it."[2] However, reliance on *Cabot* is misplaced for three reasons.

First, the case at bar involves a factual scenario of a licensee who obtained a trade secret rightfully. In contrast, *Cabot* deals with the misappropriation of a trade secret by a competitor. *See Cabot*, 1990 WL 181960, at *1. For this reason alone, *Cabot* provides no guidance.

Second, if the "wrongfully gained access" pleading standard were applied strictly and literally, no current employee or licensee could ever "wrongfully gain access" to a trade secret because they would have gained access rightfully as an employee or licensee. Followed to its logical extreme, only those

---

2. In *Cabot*, Cabot Corporation charged Fansteel with misappropriation of its trade secrets, which were wrongfully obtained from a former Cabot employee who was working for a Fansteel foreign subsidiary. *See Cabot*, 1990 WL 181960, at *1.

who were not an employee or licensee would be liable if a trade secret were misappropriated. There is too much Delaware misappropriation of trade secrets case law by at least employees for this interpretation to be true. *See, e.g., Miles Inc. v. Cookson Pigments, Inc.*, 1994 WL 676761 (Del.Ch.Nov.15, 1994); *American Hoechst Corp v. Nuodex, Inc.*, 1985 WL 11563 (Del.Ch. April 23, 1985); *Technicon Data Systems Corp. v. Curtis 1000*, 1984 WL 8268 (Del.Ch. August 21, 1984).

Third, the language of the statute itself does not support the "wrongfully gained access" pleading requirement. Nowhere in DUTSA, nor in any other supporting case law, does the "wrongfully gained access" language appear. *See generally* DEL. CODE ANN. tit. 6, § 2001.

It is concluded on the facts of this case that Tridair need not allege Bell wrongfully gained access to its trade secrets under DUTSA.

## B. Duty to Maintain Secrecy and Limit Its Use

Bell next contends it did not have a duty to maintain secrecy under the licensing agreement and therefore, could not have misappropriated Tridair's trade secrets. Not surprisingly, Tridair disagrees.

Under the Delaware Uniform Trade Secrets Act, misappropriation can occur in one of two manners: (1) acquisition by improper means, or (2) improper disclosure or use. *See* DEL. CODE ANN. tit. 6, § 2001(2)(a) and (2)(b).[3] Tridair relies on improper disclosure or use.

Under the "improper disclosure or use" branch of 6 DEL. CODE ANN. tit. 6, § 2001(2)(b)(2)(B), one method of setting forth a trade secret misappropriation cause of action is by alleging that a person used a trade secret of another in circumstances where the person knew or had reason to know that the knowledge of the trade secret was acquired under circumstances where there was a duty to limit the use of the secret. *See* DEL. CODE ANN. tit. 6, § 2001(2)(b)(2)(B).[4]

Delaware courts have not had occasion to construe § 2001(2)(b)(2)(B). However, the "limit its use" language has been construed to apply to a scenario where a plaintiff, the owner of a trade secret, voluntarily disclosed it to a defendant under confidential circumstances and the defendant subsequently used the secret in breach of an agreement with the plaintiff. *See Pulsecard, Inc. v. Discover Card Services, Inc.*, 1996 WL 137819, at *4 (D.Kan. March 5, 1996). Tridair has alleged that, "Bell was provided access to and learned of [Tridair's] trade secrets in confidence." D.I. 25, at ¶ 78. Taking this allegation, and Tridair's allegation that Bell breached its duty to limit its use of the trade secret, Tridair's pleading is sufficient to allege misappropriation of trade secrets under DUTSA.

## C. The Economic Loss Doctrine

The economic loss doctrine is a "judicially created doctrine that prohibits recovery in tort where a product has damaged only itself . . . and, the only losses suffered are economic in nature." *See Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del. 1992). Bell contends that the economic loss doctrine applies to economic loss caused by trade secret misappropriation. To support its contention, Bell cites other tort cases in which the economic loss doctrine has been

---

**3.** In relevant part, DUTSA states:

> * * * (2) "Misappropriation" shall mean:
> a. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> b. Disclosure or use of a trade secret of another without express or implied consent by a person. . . .
> DEL. CODE ANN. tit. 6, § 2001(2)(a),(b).

**4.** Subsection 2001(2)(b)(2)(B) states:

> * * * 2. At the time of the disclosure or use, knew or had reason to know that his knowledge of the trade [secret] was . . .
> * * * * B. Acquired under circumstances giving rise to a duty to maintain the secrecy or limits its use. . . .
> DEL. CODE ANN. tit. 6, § 2001(2)(b)(2)(B). Although at oral argument Bell urged the Court to find disclosure of the trade secret to a third party a prerequisite for a misappropriation of a trade secret claim, the plain language of the statute precludes this contention.

applied by the Delaware lower state courts to bar tort claims. *See, e.g., Sterling v. Beneficial Nat'l Bank, N.A.,* No. 91C–12–005, 1994 WL 315365, at *3 (Del.Super. April 13, 1994)(negligence claim); *Crowell Corp. v. Topkis Constr. Co.,* 280 A.2d 730 (Del.Super.1971) (negligence and products liability). In support of its argument that the Court should extend the economic loss doctrine to bar Tridair's trade secret misappropriation claim because of the contract between it and Tridair, Bell points to other jurisdictions where the doctrine has been applied to bar claims of negligent misrepresentation, breach of fiduciary duty, and intentional tort. *See Duquesne,* 66 F.3d at 620 (negligent misrepresentation)(pennsylvania law); *Interstate Securities Corp. v. Hayes Corp.,* 920 F.2d 769, 776–77 (11th Cir.1991)(breach of fiduciary duty); *Hoseline, Inc. v. U.S.A. Diversified Prods., Inc.,* 40 F.3d 1198, 1199–1200 (11th Cir.1994)(intentional misrepresentation). In short, Bell urges the Court to extend the economic loss doctrine to bar Tridair's trade secret misappropriation claim because of the contract between the parties.

■ Bell's contention requires the Court to ascertain whether the Delaware Supreme Court would hold the economic loss doctrine encompasses economic loss caused by trade secret misappropriation. Based on how this doctrine has developed thus far in the Delaware Supreme Court, it is unlikely the Delaware high court would condone such an extension of the economic loss doctrine.

■ Under Delaware Supreme Court precedent, "the economic loss doctrine is a complete bar to the recovery of economic loss caused by qualitatively defective products, notwithstanding the privity of contract." *Danforth,* 608 A.2d at 1198. The purpose of this doctrine is that, "[w]hen a product injures only itself, the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." *Duquesne Light Co. v. Westinghouse Electric Corp.,* 66 F.3d 604, 620 (3d Cir.1995) (quoting

*East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 871, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986)).

As least one Delaware lower court has noted that, "[t]he Supreme Court of Delaware has not extended the economic loss doctrine beyond claims against suppliers of defective goods." *Re Wilmington Trust Co. v. Aetna Casualty and Surety Co.,* 1993 WL 543968, at *3 (Del.Super.1993). This position makes good sense because only in cases where defective goods are involved can the "product only injure itself." *See 2–J Corp. t/a Dr. Feelgoode's v. Tice t/a Tice Constr. Co.,* 126 F.3d 539 (3rd Cir. 1997); *Danforth,* 608 A.2d at 1195; *Duquesne,* 66 F.3d at 620. The Delaware cases Bell cites are consistent with this principle. These cases include cause of actions that either have been barred because of negligence claims concerned with defective products or barred because of product liability claims. *See, e.g., Danforth,* 608 A.2d at 1195 (products liability and negligence for supplying a faulty building design); *Crowell,* 280 A.2d at 732 (tort claim based on the erection of a defective building).[5]

In the case *sub judice,* the misappropriation of trade secrets does not hurt the product itself, but rather, injures Tridair by increasing Tridair's competition and by causing Tridair to be deprived of the return on the money it expended in deriving the proprietary technical data. Further, to date, the economic loss doctrine has only been applied by Delaware courts where the "parties to the transaction have allocated the risk of product nonperformance through the bargaining process." *See Danforth,* 608 A.2d at 1200. No such allocation of risk has occurred between Bell and Tridair. Tridair never bargained for Bell to allegedly misuse its trade secrets. It is therefore understandable that Bell could not cite any case in the country that has applied the economic loss doctrine to trade secret misappropriation.

For the foregoing reasons, the Court predicts that the Delaware Supreme Court

---

5. The one case that does not follow this trend is the *Sterling* case, in which the Delaware Superior Court found that a negligence action was barred by the economic loss doctrine where a bank negligently mishandled a loan and subordination agreement. *See Sterling,* 1994 WL 315365, at *3. However, in *Sterling,* plaintiffs had not alleged any property damage claims, but rather purely economic loss caused to their bank account itself. *See id.*

would decline to extend the economic loss doctrine to the tort of trade secret misappropriation.

## V. CONCLUSION

The Court has denied Bell's motion to dismiss Tridair's Third counterclaim for failure to state a claim. First, it has been held that it was not necessary that Tridair specifically allege that Bell had "wrongfully gained access" to its trade secrets. Second, the Court has concluded under DUTSA that Tridair sufficiently stated a claim that Bell had a duty to maintain the secrecy of its trade secrets and to limit their use. Finally, it has been held the economic loss doctrine does not apply to the tort of trade secret misappropriation.

An appropriate order will issue.