# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MAHESWAR MIKKILINENI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N19C-05-123 |
| | ) | PRW CCLD |
| | ) | |
| PAYPAL, INC., GODADDY.COM, LLC, | ) | |
| SHIJIL TS, CEO, HARVARD | ) | |
| COLLEGE OBSERVATORY & | ) | |
| HARVARD UNIVERSITY, AND | ) | |
| UPWORK INC. | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: May 24, 2021
Decided: July 1, 2021

*Upon Defendant PayPal, Inc.'s Motion to Dismiss,*
**GRANTED.**

*Upon Defendant GoDaddy.com, LLC's Motion to Dismiss,*
**GRANTED.**

*Upon Defendant Upwork Inc.'s Motion to Dismiss*,
**GRANTED.**

## MEMORANDUM OPINION AND ORDER

Maheswar Mikkilineni, Newark, Delaware, *Pro se*.

Kristen S. Swift, Esquire, WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY LLP, New Castle, Delaware, *Attorney for Defendant PayPal, Inc.*

Gregory Fischer, Esquire, COZEN O'CONNOR, Wilmington, Delaware; Harper S. Seldin, Esquire, COZEN O'CONNOR, Philadelphia, Pennsylvania, *Attorneys for Defendant GoDaddy.com, LLC.*

Nicholas T. Verna, Esquire, WOMBLE BOND DICKINSON (US) LLP, Wilmington, Delaware, *Attorney for Defendant Upwork Inc*.

**WALLACE, J.**

Plaintiff Maheswar Mikkilineni has wielded litigation in three Delaware courts to resolve loosely-connected allegations against an assortment of business entities and quasi-governmental institutions stemming from his attempts to host, encode, and grow a website designed to commercialize his scientific and religious views about the atomic underpinnings of the universe. No doubt his zeal and caring are genuine. And, while doggedly persistent, Mr. Mikkilineni has been nothing but civil and gentlemanly in his pursuit of entities he believes have wrongfully obstructed these goals of enlightenment. But unfortunately, that pursuit of certain entities via the particular claims brought here has travelled a blind path and must come to an end.

Central to this decision are the claims Mr. Mikkilineni has leveled at defendants PayPal, Inc., GoDaddy.com, LLC, and Upwork Inc. He accuses PayPal of negligently handling his payment dispute with a third-party website developer whom he, in turn, has accused of stealing his money and infringing his intellectual property. He insists that GoDaddy's faulty servers have caused his website to glitch and leak proprietary data. And he urges that Upwork wrongly refused to squash a problem he had with a freelance animation artist Upwork recruited. PayPal and GoDaddy have moved to dismiss under Rule 12(b)(6), contending that Mr. Mikkilineni has failed to state any reasonably conceivable or procedurally-proper

claims. Upwork has moved to dismiss on jurisdictional grounds, arguing that Mr. Mikkilineni must arbitrate his claims.

Mr. Mikkilineni is a retired physicist and engineer, not a lawyer. So, the Court has construed his four, *pro se* complaints with as much liberality as Delaware law permits. Nevertheless, even given the generous and forgiving read the Court has afforded them, nothing explicit or implicit in Mr. Mikkilineni's filings reveals a remediable injury. One could laud Mr. Mikkilineni's near Quixotean efforts to represent himself here and elsewhere. But the defendants' motions must be **GRANTED**. Accordingly, and for the reasons discussed below, the various claims against them are **DISMISSED WITH PREJUDICE**.

# I. FACTUAL BACKGROUND[1]

## A. THE ALLEGATIONS INVOLVING PAYPAL, GODADDY AND UPWORK.

Mr. Mikkilineni owns and publishes "Maheswar.org"—a "research" and "educat[ional]" website created to refute mainstream physics with the teachings of Indra.[2] Mr. Mikkilineni has been inspired by what he believes to be incorrect, but nevertheless academically-accepted, laws of the universe advanced by theorists like "Einstein" and "Sagan," professional astronomers, and former Presidents of the United States.[3] Using Maheswar.org, Mr. Mikkilineni hopes to capitalize on his

---

[1] The Court limits its factual recitations to the circumstances relevant for resolving this piece of Mr. Mikkilineni's lawsuit. Mr. Mikkilineni's practice has been to "amend" his complaints by adding arguments against the defendant's motions without changing his core assertions. *But cf. GWO Litig. Tr. v. Sprint Sols., Inc.*, 2018 WL 5309477, at *17 n.177 (Del. Super. Ct. Oct. 25, 2018) (citing Ct. Ch. R. 15(aaa)) (noting that a party cannot amend a pleading with a responsive filing); *In re Ezcorp. Inc. Consulting Agreement Derivative Litig.*, 130 A.3d 934, 941 (Del. Ch. 2016) (explaining that one purpose of the Court of Chancery's amendment rules is to curb "*seriatim* complaints"). As a result, the Court draws the key allegations from Mr. Mikkilineni's third amended complaint, *see* Am. Compl., Apr. 30, 2021 (D.I. 97) (hereinafter "Compl."), which is the operative one under this Court's Civil Rules, and from the exhibits that are integral to, and incorporated in, that complaint, *see generally Windsor I, LLC v. CWCap. Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020) (enumerating the species of external documents and publications that a court may consider on a motion to dismiss); *see also Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001) ("[A] claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law."). To be clear, for the sake of completeness, and given his *pro se* status, the Court also has considered any variations on these allegations that were presented in Mr. Mikkilineni's other complaints too. *See generally* Compl., May 17, 2019 (D.I. 1); Am. Compl., July 19, 2019 (D.I. 40); Am. Compl., Mar. 16, 2020 (D.I. 68).

[2] Compl. ¶¶ 2.0(a), (e). Indra is a deity worshipped by followers of Hinduism and credited with mastering and generating certain natural forces. *See generally Indra*, ENCYCLOPEDIA BRITTANICA, https://www.britannica.com/topic/indra (last visited June 16, 2021).

[3] Compl. ¶¶ 2.0(b)–(e).

philosophies by selling membership interests to non-profit companies, lay subscribers, and "investors."[4] To achieve that goal, Mr. Mikkilineni had turned to the service providers and the public and private organizations he now has sued.

Having secured a server for Masheswear.org from GoDaddy, which hosts internet domains, Mr. Mikkilineni contracted with defendant SparkSupport Infotech Pvt. Ltd. ("Spark"), an India-based coder and website developer, to obtain the latter's assistance with the "Task 1 and 2" phases of Maheswar.org's formation (*e.g.*, "webRTC" and "video-audio" capabilities).[5] Under the terms, Spark purportedly agreed to complete all its projects by late June 2018 in exchange for two "advance-fees" of $4,000, "proprietary-data," passwords, and pre-existing code.[6] Mr. Mikkilineni transferred the funds from his personal account through PayPal, a transactional intermediary that offers banking and e-commerce products to its users.[7]

Spark allegedly missed its first deadline.[8] So, Mr. Mikkilineni availed himself of PayPal's internal dispute-resolution procedures to extract a refund.[9] Alerted to

---

[4]   *Id.* ¶ 2.0(e).

[5]   *Id.* ¶ 2.1.

[6]   *Id.* ¶ 2.2.

[7]   *Id.* ¶¶ 2.2(a)–(b).

[8]   *Id.* ¶¶ 2.3(a)–(b).

[9]   *Id.* ¶ 2.3(d).

the payment dispute, Spark reappeared and renegotiated its deadlines with Mr. Mikkilineni.[10] Given Spark's assurances, Mr. Mikkilineni dropped the dispute.[11]

When the revised deadline arrived, however, Spark apparently again failed to deliver.[12] At this point, Mr. Mikkilineni suspected that Spark never had intended to perform, but rather sought to pocket his fees and misappropriate his proprietary information and intellectual property.[13] That suspicion prompted Mr. Mikkilineni to revive his payment dispute on PayPal.[14] Consistent with PayPal's dispute process, Spark and Mr. Mikkilineni adduced competing versions of what went wrong.

After considering Mr. Mikkilineni's "evidence," PayPal reimbursed only one of the two $4,000 advance-fees, clearing the residual.[15] Mr. Mikkilineni alleges that PayPal, harboring "bad-faith," did not support its determination with any provision

---

[10] *Id.* ¶ 2.3(e).

[11] *Id.* ¶ 2.3(f).

[12] *Id.* ¶ 2.3(g).

[13] *Id.* ¶¶ 2.3(h), 2.4.

[14] *Id.* ¶ 2.4.

[15] *Id.* ¶ 2.4(b).

in its "user agreement."[16]   That was so, continues Mr. Mikkilineni, despite an affirmative duty on PayPal to redress "IP infringement."[17]

Adding insult to his injuries, Mr. Mikkilineni asserts that, during these events, his relationships with GoDaddy and Upwork deteriorated.  GoDaddy's internet servers allegedly caused Maheswar.org to glitch, resulting in confusing e-mail messages and unhelpful troubleshooting with GoDaddy's support hotline.[18]  The submission form errors, Mr. Mikkilineni posits, also have facilitated the theft of Maheswar.org's data.[19]  And Upwork—a recruiting firm—allegedly connected Mr. Mikkilineni to a freelance animation artist who was supposed to sculpt a 3D model for Masheswar.org but instead absconded with his payment and the original animation file.[20]  The issue, Mr. Mikkilineni says, is not the freelancer's non-performance; it is Upwork's refusal to get meaningfully involved.[21]

---

[16]   *Id.* ¶ 2.4(c).

[17]   *Id.* ¶ 2.5(e).

[18]   *Id.* ¶¶ 3.0–3.1.

[19]   *Id.*

[20]   *Id.* ¶¶ 5.0(a)–(i).

[21]   *Id.* ¶¶ 5.0(e)–(f).

To right wrongs inflicted on "the People" by agents of "selfish [] power,"[22] Mr. Mikkilineni has prosecuted his case in the Delaware Justice of the Peace Court, the United States District Court for the District of Delaware, and this Court.

**B. THE JUSTICE OF THE PEACE COURT LITIGATIONS.**

Mr. Mikkilineni first brought PayPal to the Justice of the Peace Court.[23] He claims to have asked for an order compelling PayPal to honor its user agreement. But the cover sheet to his complaint asserted money damages.[24] As a result, the court construed his allegations as a breach-of-contract claim for the remaining $4,000 advance-fee. The parties conducted a trial on that issue.

At the conclusion of Mr. Mikkilineni's case-in-chief, PayPal moved for, and obtained, a directed verdict.[25] Mr. Mikkilineni did not appeal that ruling. Instead, he filed a motion styled as one for "a new trial or reargument." As support for his motion, Mr. Mikkilineni cited the coffee he had for lunch, which inhibited his

---

[22]  *Id.* ¶¶ 1.0–1.1, 1.3.

[23]  Ex. A to Def.'s Mot. to Dismiss, June 19, 2019 (D.I. 20) (J.P. Ct. Compl.).

[24]  *Id.*

[25]  Ex. B to Def.'s Mot. to Dismiss at 3 (D.I. 20) (Order).

presentation by "drugging" him and temporarily depriving him of his hearing.[26] The court denied the motion.[27] Mr. Mikkilineni did not appeal that ruling either.

In a second trip to that same judicial well, Mr. Mikkilineni next sued Upwork in the Justice of the Peace Court.[28] He sought the return of the animation file that the freelancer abducted via a prayer for a judicial order compelling Upwork to do something about it.[29] Citing its user agreement, Upwork argued that Mr. Mikkilineni agreed to arbitrate his claim in California, and alternatively, there was no way it could have breached the agreement between him and the freelancer, as it was not a party to that contract.[30] The J.P. Court accepted Upwork's arbitration arguments, and dismissed the case with prejudice for lack of subject matter jurisdiction.[31] Yet again, Mr. Mikkilineni declined to appeal.

## C. THE CURRENT LITIGATION AND ITS TRAVAILS.

Mr. Mikkilineni originally named only (1) PayPal, (2) GoDaddy, (3) Spark, and (4) the Chandra X-Ray Center (the "CXC") of the Harvard-Smithsonian Center

---

[26] Ex. C to Def.'s Mot. to Dismiss at 4-5 (D.I. 20) (Mot.).

[27] Ex. D. to Def.'s Mot. to Dismiss (D.I. 20) (Order).

[28] Exs. A & C to Def.'s Mot. to Dismiss (D.I. 108) (Compl.).

[29] Ex. D to Def.'s Mot. to Dismiss at 1 (D.I. 108) (Order).

[30] *Id.* at 1–2.

[31] *Id.* at 2.

for Astrophysics and the CXC's "Director" as parties. Mr. Mikkilineni had sued the CXC and its Director (in her individual capacity) because, in his view, the CXC and its personnel squandered their federal funding by rejecting his request to capture photos of neutrons using the CXC's imagers and telescopes.[32] Almost immediately, PayPal and GoDaddy moved to dismiss under Rule 12(b)(6).

Mr. Mikkilineni's inclusion of the CXC's Director—a federal employee acting within the scope of her employment—led the CXC to observe that, by statute, he actually had sued the United States.[33] So, the CXC removed to Delaware's federal district court. There, the CXC obtained dismissal of itself on sovereign immunity grounds.[34] Having discharged the CXC, the court remanded the rest of the case here.

Since his return from federal court, Mr. Mikkilineni has unloaded a blunderbuss of amended complaints. Having found no new factual assertions in any iteration, PayPal and GoDaddy renewed their motions to dismiss. But, through his

---

[32] Ex. to Compl. (D.I. 98) (CXC Rejection Letter).

[33] Notice of Removal (D.I. 36); *see generally* 28 U.S.C. § 2679(d)(l) ("Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.").

[34] Mem. at 5, *Mikkilineni v. PayPal, Inc., et al.*, 19-cv-01391-CFC-SRF (D. Del. Feb. 21, 2020), ECF No. 34 (D.I. 78) (adopting R. & R.); Order at 1–2, *Mikkilineni v. PayPal, Inc., et al.*, 1:19-cv-01391-CFC-SRF (D. Del. Feb. 21, 2020), ECF No. 35 (D.I. 80) (dismissing the CXC and its Director).

filings, Mr. Mikkilineni—inadvertently or otherwise—resurrected the CXC and its governmental affiliates. As a result, the United States Attorney for the District of Delaware intervened, removing the case to federal court again and forcing a second deferral of PayPal and GoDaddy's motions.[35] Once more, the Delaware district court dismissed the CXC and its managers and remanded everyone else back here.

The Court now has the latest of Mr. Mikkilineni's amended complaints, which substitutes the Harvard College Observatory (the "HCO") for the CXC and adds Upwork.[36] In this installment, Mr. Mikkilineni has listed the claims he believes he has stated:

(1) PayPal: "negligence and/or gross-Negligence"; and "bad-faith and/or fraud";

(2) Spark: "breach of contract;" "negligence and/or gross-negligence"; and "bad-faith and/or fraud";

(3) GoDaddy: "negligence and/or gross-negligence";

(4) The HCO: "negligence and/or gross-negligence"; "bad-faith and/or fraud"; and "due process under 14th or 5th amend."; and

(5) Upwork: "negligence and/or gross-negligence"; "tort or wrongful interference with a contract"; and "bad-faith and/or fraud".[37]

---

[35] Notice of Removal (D.I. 84).

[36] Mr. Mikkilineni's allegations against the HCO, which indirectly controls the CXC through the Harvard-Smithsonian Center for Astrophysics, are identical to the allegations he had made against the CXC. Compl. ¶ 1.4.

[37] *Id.* at 21–22 (pdf. p. 22–23).

But Mr. Mikkilineni hasn't specified the remedies he seeks for this misconduct.[38]

For the third time, PayPal and GoDaddy have moved to dismiss. Together, they argue that none of these claims is reasonably conceivable. Separately, (1) PayPal contends that Mr. Mikkilineni is barred by the doctrines of *res judicata* and collateral estoppel from re-litigating claims that were or could have been brought in the Justice of the Peace Court; and (2) GoDaddy asserts that, pursuant to the parties' Arizona forum selection clause, Mr. Mikkilineni has sued it in the wrong place.

For its part, Upwork has moved under Rule 12(b)(1). It contends—as it did before in the Justice of the Peace Court—that only a California arbitrator has jurisdiction over Mr. Mikkilineni's claims.

Unsurprisingly, Mr. Mikkilineni has opposed all these motions.

In ruling on the motions, the Court will evaluate Mr. Mikkilineni's list of counts and any implicit counts that would have made the list had they been crafted with the assistance of counsel. As explained below, whether articulated clearly or not, Mr. Mikkilineni's claims against these three defendants must be dismissed.

---

[38] *See, e.g.*, *id.* at 21 (pdf. p. 22) ("[The] plaintiff requests this Court for discovery of evidence and a trial in the matter, in the interest of Justice. Plaintiff requests this Court for a Jury trial on the claims. . . .").

## II. STANDARDS OF REVIEW

### A. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.

A party may move to dismiss under this Court's Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[39] In resolving a Rule 12(b)(6) motion, the Court (1) accepts as true all well-pleaded factual allegations in the complaint; (2) credits vague allegations if they give the opposing party notice of the claim; (3) draws all reasonable factual inferences in favor of the non-movant; and (4) denies dismissal if recovery on the claim is reasonably conceivable.[40] Delaware's pleading standard is "minimal."[41] Dismissal is inappropriate unless "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[42]

"A *pro se* complaint, however inartfully pleaded,"[43] is "judged by a less stringent standard than a pleading or document filed by an attorney."[44] But "there is

---

[39] Del. Super. Ct. Civ. R. 12(b)(6).

[40] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[41] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 895 (Del. 2002)).

[42] *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 2021 WL 1016442, at *3 (Del. Super. Ct. Mar. 17, 2021) (internal quotation marks omitted); *see Cent. Mortg.*, 27 A.3d at 537 n.13 ("Our governing 'conceivability' standard is more akin to 'possibility. . . .'").

[43] *Browne v. Robb*, 583 A.2d 949, 959 (Del. 1990).

[44] *Johnson v. State*, 442 A.2d 1362, 1364 (Del. 1982) (internal quotation marks omitted).

no different set of rules for *pro se* plaintiffs."[45]   That means the Court need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[46]   And that also means the Court is relieved of "every strained interpretation of the allegations proposed by the plaintiff. . . ."[47]   Accordingly, though the Court is "[c]ognizant of the difficulties faced by *pro se*" litigants,[48] it cannot "sacrifice the orderly and efficient administration of justice"[49] or impair "the substantive rights of [represented] parties"[50] to save their claims when their claims plainly have no merit.

---

[45]   *Anderson v. Tingle*, 2011 WL 3654531, at *2 (Del. Super. Ct. Aug. 15, 2011) (quoting *Draper v. Med. Ctr. of Del.*, 767 A.2d 796, 799 (Del. 2001)).

[46]   *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).

[47]   *Malpiede*, 780 A.2d at 1083.

[48]   *Batchelor v. Alexis Props., LLC*, 2018 WL 5919683, at *7 (Del. Super. Ct. Nov. 13, 2018).

[49]   *Damiani v. Gill*, 2015 WL 4351507, at *1 (Del. July 14, 2015) (internal quotation marks omitted); *see, e.g.*, *Sloan v. Segal*, 2008 WL 81513, at *7 (Del. Ch. Jan. 3, 2008) ("Delaware courts, at their discretion, look to the underlying substance of a *pro se* litigant's filings rather than rejecting [those] filings for formal defects. . . . [H]owever, self-representation is not a blank check for defect." (internal quotation marks and citations omitted)); *Harrison v. Hodgson Vocational Tech. High Sch.*, 2007 WL 3112479, at *2 (Del. Super. Ct. Oct. 3, 2007) (A *pro se* complaint "must, at a minimum, provide the Court with enough information to conduct a meaningful consideration of the merits.").

[50]   *Alston v. State*, 2002 WL 184247, at *1 (Del. Super. Ct. Jan. 28, 2002); *see also In re Est. of Hall*, 2005 WL 2473791, at *1 (Del. Aug. 26, 2005) ("While this Court allows a *pro se* litigant leeway in meeting the briefing requirements, the brief at the very least must assert an argument that is capable of review." (citing *Yancey v. Nat'l Tr. Co., Ltd.*, 1996 WL 309819, at *1 (Del. May 19, 1998))); *Vick v. Haller*, 1987 WL 36716, at *1 (Del. Mar. 2, 1987) (observing that a *pro se* complaint must be dismissed where "it appears that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief").

## B. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION.

"Whenever it appears by suggestion of the parties or otherwise that the Court lacks" subject matter jurisdiction over a claim, the Court must dismiss that claim.[51] In considering a Rule 12(b)(1) motion, the Court "need not accept [a plaintiff's] factual allegations as true and is free to consider facts not alleged in the complaint."[52] Accordingly, whereas the movant "need only show that the Court lacks jurisdiction,"[53] the non-movant bears the "far more demanding" burden of "prov[ing]" the Court's jurisdiction exists.[54]

## III.  DISCUSSION

### A. MR. MIKKILINENI FAILS TO STATE CLAIMS AGAINST GODADDY.

As its principal authority in favor of dismissal, GoDaddy invokes the "economic loss doctrine." The economic loss doctrine prohibits recovery in negligence where "the only losses suffered are economic in nature."[55] It is

---

[51]  Del. Super. Ct. Civ. R. 12(h)(3); *see Webster v. Brosman*, 2019 WL 5579489, at *1 (Del. Super. Ct. Oct. 29, 2019) ("Superior Court Rule of Civil Procedure 12(h)(3) mandates the Court to dismiss a claim if it appears from the record that the Court does not have jurisdiction over the claim."); *see generally* Del. Super. Ct. Civ. R. 12(b)(1).

[52]  *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007) (internal quotation marks omitted).

[53]  *Airbase Carpet Mart, Inc. v. AYA Assocs., Inc.*, 2015 WL 9302894, at *2 (Del. Super. Ct. Dec. 15, 2015), *aff'd*, 2016 WL 4938890 (Del. Sept. 16, 2016).

[54]  *Appriva*, 937 A.2d at 1284 n.14 (internal quotation marks omitted).

[55]  *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del. 1992); *see also Crowell Corp. v. Topkis Constr. Co.*, 280 A.2d 730, 732 (Del. Super. Ct. 1971) ("The great weight of authority

"especially suited to cases where privity of contract"[56] exists because an agreement memorializing a business relationship presumptively affords adequate recourse when that deal breaks down.[57] Put differently, the doctrine prohibits parties to a contract from suing in tort for the failure of a product or service to meet "bargained for expectations."[58] Mr. Mikkilineni, though, has tried to do just that.

Mr. Mikkilineni contends that GoDaddy sold him a defective item. He alleges that GoDaddy's buggy server disrupted his commercial use of Maheswar.org, resulting exclusively in profit-based harm to his intellectual property. At best, these assertions signal a breach-of-contract claim potentially compensable under GoDaddy's browsable user agreement. But, because Mr. Mikkilineni has framed his accusations in tort, the economic loss doctrine operates to deny him a two-for-

---

does not [] permit tort recovery [for pure economic loss] in the absence of physical injury to a person or [a] dramatic incident such as [an] accident, [a] collapse or [an] explosion.").

[56] *Danforth*, 608 A.2d at 1200.

[57] *E.g.*, *Envolve Pharm. Sols., Inc. v. Rite Aid Hdqtrs. Corp.*, 2021 WL 140919, at *8 (Del. Super. Ct. Jan. 15, 2021) ("A contract creates reciprocal duties, and where those duties overlap preexisting common-law tort duties, 'it is presumed that the parties to the transaction have allocated the risk of product nonperformance through the bargaining process,' supplanting the common law of torts." (quoting *Danforth*, 608 A.2d at 1200)); *see also Wolf v. Magness Constr. Co.*, 1994 WL 728831, at *4 (Del. Ch. Dec. 20, 1994) ("[T]he 'economic loss doctrine' [] prevents recovery in tort for injuries that should be covered by warranties in contract law." (citing *Danforth*, 608 A.2d at 1198)); *see generally Khushaim v. Tullow Inc.*, 2016 WL 3594752, at *4 (Del. Super. Ct. June 27, 2016) ("The driving principle for the [economic loss doctrine] is the notion that contract law provides a better and more specific remedy than tort law." (internal quotation marks omitted)).

[58] *Danforth*, 608 A.2d at 1196 (internal quotation marks omitted).

one.[59]  That is so despite Mr. Mikkilineni's feeling that he has been victimized by GoDaddy's "power."  The economic loss doctrine applies indiscriminately to all aggrieved buyers, including individual consumers with unequal bargaining power.[60]  Accordingly, Mr. Mikkilineni's negligence claim against GoDaddy is **DISMISSED**.[61]

All this in mind, Delaware courts, in their discretion, may look beyond a *pro se* litigant's uncounseled claim classifications to ensure his case is "fully and fairly heard."[62]  A court should not exalt the "formal defects" in *pro se* filings over their "underlying substance."[63]  Accordingly, the Court will here consider the breach-of-

---

[59]  *Cf. Khushaim*, 2016 WL 3594752, at \*4 (observing, in the context of the economic loss doctrine, that "a tort and contract claim might co-exist if the defendant breached a duty that is *independent* of the duties imposed by the contract" (internal quotation marks omitted)).

[60]  *See, e.g.*, *Danforth*, 608 A.2d at 1200–01 (rejecting an argument that the economic loss doctrine should not apply to "individual consumers" because they have "inherently" less bargaining power than "commercial buyers" and explaining further that the Generally Assembly codified Article 2 of the Uniform Commercial Code, in part, to supersede tort law "as the complete framework of the rights and remedies available to parties to a sale of goods contract"); *see generally* DEL. CODE ANN. tit. 6, §§ 2–101 *et seq.* (2020).

[61]  Because Mr. Mikkilineni can't bring his negligence claim, it follows that he can't bring a "gross" negligence claim either.

[62]  *Durham v. Grapetree, LLC*, 2014 WL 1980335, at \*5 (Del. Ch. May 16, 2014) (internal quotation marks omitted).

[63]  *Sloan*, 2008 WL 81513, at \*7; *see New Castle Cty. v. Kostyshyn*, 2014 WL 1347745, at \*5 (Del. Super. Ct. Apr. 4, 2014) ("Given the liberal standard for construing *pro se* pleadings," the Court may entertain claims fairly raised but not explicitly named in a *pro se* complaint. (citations omitted)).

contract claim it detected underneath Mr. Mikkilineni's failed negligence claim. That contract claim, however, likewise fails.

The elements of a breach-of-contract claim are "(1) the existence of a contractual obligation; (2) a breach of that obligation; and (3) damages resulting from the breach."[64] The only contractual obligation or breach that Mr. Mikkilineni identifies is a submission form error on Maheswar.org for which he blames GoDaddy's abandoned "duty" to fix its "server-problem[s]."[65] But, according to Mr. Mikkilineni's own allegations, GoDaddy, after investigating the problems raised in his customer service calls, concluded that a third-party had hacked the site and corrupted its hosting files.[66] Further undermining a breach claim, Mr. Mikkilineni admits that, at the time the glitching occurred, he had not been logging into his website regularly or examining its own code functionality.[67] In other words, Mr. Mikkilineni's allegation that GoDaddy—rather than someone or something else—caused the errors is unsupported by any perceptible facts. Accordingly, his

---

[64] *Buck v. Viking Holding Mgmt. Co. LLC*, 2021 WL 673459, at *3 (Del. Super. Ct. Feb. 22, 2021) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

[65] Compl. ¶ 3.1.

[66] *Id.* ¶ 3.0(i).

[67] *Id.* ¶ 3.0(b).

conclusory breach-of-contract claim—and GoDaddy as a party—are **DISMISSED**.[68]

## B. MR. MIKKILINENI FAILS TO STATE CLAIMS AGAINST PAYPAL.

### 1. All the PayPal Claims Are Precluded.

Taking a procedural angle, PayPal argues that Mr. Mikkilineni's complaints, which simply resubmit the facts and claims he litigated in the Justice of the Peace Court, are barred by the doctrines of *res judicata* and collateral estoppel. Both apply.

To invoke *res judicata*, the defendant must establish five elements:

(i)    the original court had jurisdiction over the subject matter and the parties;

(ii)   the parties to the original action were the same as those parties, or in privity, in the case at bar;

(iii)  the original cause of action or the issues decided was the same as the case at bar;

(iv)  the issues in the prior action must have been decided adversely to the [claimant] in the case at bar; and

(v)   the decree in the prior action was a final decree.[69]

"*Res judicata* exists to provide a definite end to litigation . . . and [to] promote judicial economy."[70] It "serves to prevent a multiplicity of needless litigation" by

---

[68] Because the Court has concluded that Mr. Mikkilineni has failed to state reasonably conceivable claims against GoDaddy, the Court need not also consider GoDaddy's forum selection clause arguments.

[69] *RBC Cap. Mkts., LLC v. Educ. Loan Tr. IV*, 87 A.3d 632, 643 (Del. 2014) (formatting added) (internal quotation marks omitted).

[70] *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 191 (Del. 2009) (citation omitted); *e.g.*, *Kossol v. Ashton Condo. Ass'n, Inc.*, 1994 WL 10861, at *2 (Del. Jan. 6, 1994) (*Res judicata* "is

barring an unsuccessful litigant from reasserting claims in a second lawsuit that "actually were decided" or "might have been raised" in a prior lawsuit involving the same parties.[71]  To that end, an unsuccessful litigant cannot avoid *res judicata* by "splitting" his claims.[72]  A previously-failed theory that has been restyled as a different cause of action but rests on the same underlying facts will be deemed—and barred—as one that could have been brought in the prior proceeding.[73]

Mr. Mikkilineni merely has reinitiated his Justice of the Peace case, satisfying all *res judicata*'s elements and invoking its core policies.  To begin, the Justice of the Peace Court had personal and subject matter jurisdiction.  Mr. Mikkilineni and

---

based on public policy requiring a definite end to litigation.  It permits a litigant to press his claims but once, and requires him to be bound by the determination of the forum he has chosen, so that he may have one day in court but not two.").

[71]  *LaPoint*, 970 A.2d at 191–92 (internal quotation marks omitted).

[72]  *E.g.*, *Maldonado v. Flynn*, 417 A.2d 378, 382 (Del. Ch. 1980) ("The rule against claim splitting is an aspect of . . . *res judicata* and is based on the belief that it is fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, than to permit him to prosecute overlapping or repetitive actions in different courts or at different times."); *accord Kossol*, 1994 WL 10861, at *2.

[73]  *See, e.g.*, *Kossol*, 1994 WL 10861, at *2 ("Even if a substantive theory of recovery asserted in a subsequent lawsuit is different from that presented in prior litigation, when the second action is based on the same transaction as the first, the claim has been split and must be dismissed."); RESTATEMENT (SECOND) OF JUDGMENTS § 25 cmt. j (1982) ("Where the plaintiff may in one action claim two or more remedies cumulatively rather than alternatively, all arising from the same transaction, but seeks fewer than all of these remedies, and a judgment is entered that extinguishes the claim under the rules of merger or bar, he is precluded from maintaining another action for the other remedies."); *see also Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 817 (Del. 2018) ("Under *res judicata*, the claims asserted in the earlier action must be the same as those asserted in the present action.").

PayPal—two Delaware citizens who are the original, same parties—litigated over $4,000, a total that falls squarely within that court's limited statutory jurisdiction.[74] Mr. Mikkilineni lost on the merits; the Justice of the Peace Court issued a written decision explaining why PayPal's motion for a directed verdict was granted and dismissed Mr. Mikkilineni's claim with prejudice after he was granted a full opportunity to make his case-in-chief. And Mr. Mikkilineni did not appeal any of the J.P. Court's rulings, keeping them long finalized.[75]

That leaves the "same claim" element. "In determining whether two claims constitute the 'same' cause of action for *res judicata* purposes, Delaware follows a transactional approach."[76] Under the transactional approach, *res judicata* bars "litigation between the same parties if the claims in the later litigation arose from the same transaction that forms the basis of the previous adjudication."[77] In turn, determining whether two claims arise from the same transaction "requires pragmatic

---

[74] *See* DEL. CODE ANN. tit. 10, § 9301(1) (2020) (empowering the Justice of the Peace Court to adjudicate contract and tort claims that place less than $15,000 in controversy); *see generally Jones v. Hertz Corp.*, 2014 WL 3401606, at *5 (Del. Super. Ct. July 8, 2014) ("The Justice of the Peace Court is a court of limited jurisdiction with authority derived solely from statute." (internal quotation marks omitted)).

[75] *See Carnevale v. Gaeger*, 2012 WL 3642721, at *2–3 (Del. Super. Ct. July 31, 2012) (barring inclusion in a later-filed Common Pleas Court case injuries alleged in a previously dismissed Justice of the Peace Court case).

[76] *RBC Cap.*, 87 A.3d at 645.

[77] *Kossol*, 1994 WL 10861, at *2.

-20-

consideration," weighing factors such as the relatedness of the claims "in time, space, origin or motivation. . . ."[78] Invariably, however, "[t]wo claims derived from a common nucleus of operative facts arise from the same transaction."[79]

As did his contract claim, Mr. Mikkilineni's "negligence," "fraud," and "bad faith" claims all arise from a common nucleus: his refund battle with PayPal in the Justice of the Peace Court. Indeed, a side-by-side comparison of the instant and original complaints reveals that his allegations in this Court are materially identical to those he made to this Court's sister.[80] To the extent Mr. Mikkilineni seeks to reintroduce the facts essential to a past, unsuccessful litigation in the guise of three, renamed counts, those counts are precluded and dismissed as split.

On that, and alternatively, collateral estoppel would erase the "new" counts too. Collateral estoppel applies when:

(i) [t]he issue previously decided is identical with the one presented in the action in question[;]

(ii) the prior action has been finally adjudicated on the merits[;]

(iii) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication[;] and

---

[78] *LaPoint*, 970 A.2d at 193 (alteration and internal quotation marks omitted).

[79] *Id.* (cleaned up).

[80] *Compare* Exs. A & C to Def.'s Mot. to Dismiss (J.P. Compl.) *with* Compl. ¶¶ 2.4–2.5.

(iv) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[81]

 "The doctrine of collateral estoppel 'precludes a party from relitigating a fact issue that has previously been litigated and decided in a prior action involving that party.'"[82] It "is designed to provide repose and put a definite end to litigation."[83] Like *res judicata*, another aim of issue preclusion is to prevent a civil litigant from obtaining a second opinion on its previously-unsuccessful theories by deploying a procedurally-infirm collateral attack as a surrogate for an untimely or forfeited direct appeal.[84] Collateral estoppel will thwart that attempt where "the same [factual] issue was presented in both cases, the issue was litigated and decided in the first suit, and the determination was essential to the prior judgment."[85]

---

[81] *Betts v. Townsends, Inc.*, 765 A.2d 531, 535 (Del. 2000) (formatting added) (internal quotation marks omitted).

[82] *Rogers v. Morgan*, 208 A.3d 342, 346 (Del. 2019) (quoting *Smith v. Guest*, 16 A.3d 920, 934 (Del. 2011)).

[83] *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1216 (Del. 1991); *accord M.G. Bancorp., Inc. v. Le Beau*, 737 A.2d 513, 520 (Del. 1999).

[84] *Cf. Crothall v. Zimmerman*, 94 A.3d 733, 737 n.11 (Del. 2014) ("It is settled that preclusion should be defeated by the inability to secure appellate review. . . ." (emphasis and internal quotation marks omitted)); *see also M.G. Bancorp.*, 737 A.2d at 520 ("Pursuant to the doctrine of collateral estoppel, if a court has decided an issue of fact necessary to its judgment, that decision precludes relitigation of [that] issue in a suit on a different cause of action involving a party to the first case." (internal quotation marks omitted)).

[85] *Rogers*, 208 A.3d at 346 (second alteration in original) (internal quotation marks omitted).

As explained, Mr. Mikkilineni just attempts to re-litigate the unchanged facts that were necessary to the Justice of the Peace Court's judgment.[86]  This, issue preclusion, does not allow.  Accordingly, his claims are collaterally estopped as well.

Finally, even if preclusion qualified as a technical mistake for which a *pro se* litigant should not be faulted, Mr. Mikkilineni's fraud and "bad faith" claims would fail for independent, dispositive reasons.

## 2. The Fraud Claim Fails.

Fraud has five elements that must be pleaded with enhanced particularity:[87]

    (i)   a false representation, usually one of fact, made by the defendant;

    (ii)  the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

    (iii) an intent to induce the plaintiff to act or refrain from acting;

    (iv)  the plaintiff's action or inaction taken in justifiable reliance upon the representation; and

    (v)   damage to the plaintiff as a result of such reliance.[88]

But not one of these elements is present here.  For example, the Court searches Mr. Mikkilineni's complaints in vain for a false representation.  Putting aside

---

[86]   *See Gunn v. U.S. Bank Nat'l Ass'n*, 2011 WL 6009676, at *1 (Del. Dec. 1, 2011) (affirming lower court on both *res judicata* and collateral estoppel grounds where the facts of the two litigations were unchanged); *Betts*, 765 A.2d at 734 ("Essentially, *res judicata* bars a court . . . from reconsidering conclusions of law previously adjudicated while collateral estoppel bars relitigation of issues of fact previously adjudicated.").

[87]   *See* Del. Super. Ct. Civ. R. 9(b).

[88]   *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) (formatting added).

-23-

Mr. Mikkilineni's characterizations of PayPal's arguments as "fraudulent," his complaints suggest PayPal's only "false representation" was its boast of an efficient dispute-resolution process, or more aptly in his view, a process that resolves Mr. Mikkilineni's refund disputes the way he wishes. Mr. Mikkilineni's personal objection to PayPal's incomplete disbursement of his refund and negative treatment of his evidence does not amount to a colorable claim for common law fraud. And if it somehow could, it here lacks the specificity imposed by Rule 9(b).[89] Given this absence of specificity, the only thing differentiating this claim from a breach-of-contract claim is inclusion of the word "fraud." Brought into sharper focus, Mr.

---

[89] *See* Del. Super. Ct. Civ. R. 9(b) ("In all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity."); *see also, e.g.*, *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207–08 (Del. Ch. 2006) (identifying the "circumstances" that must be pleaded with particularity, which include "the time, place, and contents of the false representations" and "what that [alleged fraudster] gained from making the representation"), *aff'd sub nom.*, *Trenwick Am. Litig. Tr. v. Billett*, 2007 WL 2317768 (Del. Aug. 14, 2007); *see generally Avve, Inc. v. Upstack Techs., Inc.*, 2019 WL 1643752, at *5 (Del. Super. Ct. Apr. 12, 2019) ("Delaware is a 'notice pleading state', and in most civil actions the rules of procedure require that the plaintiff simply provide a short and plain statement which gives the defendant fair notice of the claim. . . . Superior Court Civil Rule 9(b) deviates from this general rule and imposes a heightened pleading standard for allegations of fraud." (cleaned up)).

Rule 9(b)'s heightened pleading standard applies to all litigants, even *pro se* ones. *E.g.*, *Ward v. Indian River Sch. Dist.*, 1991 WL 12100, at *1 (Del. Jan. 4, 1991) (affirming this Court's dismissal of a *pro se* litigant's fraud claim for failure to meet Rule 9(b)'s demands); *Maddox v. CitiMortg., Inc.*, 2014 WL 1155312, at *2 (Del. Super. Ct. Feb. 28, 2014) ("While Plaintiff has provided the Court with greater factual detail for the allegations underlying his fraud claim, Plaintiff was required to provide this level of detail in his original complaint under Civil Rule 9(b). . . . While the Court may grant *pro se* litigants reasonable accommodations[,] . . . procedural requirements will not be relaxed." (citation omitted)); *see also Noble v. QBE Ins. Co.*, 2018 WL 3689678, at *1 (Del. Super. Ct. July 30, 2018) (stating Rule 9(b)'s pleading standard and dismissing complaint as frivolous, in part, because a court "is instructed to dismiss a complaint where 'even a pro se litigant, acting with due diligence, should have found well settled law disposing of the issue(s) raised'" (quoting DEL. CODE ANN. tit. 10, § 8803(b) (2020))).

Mikkilineni's fraud claim, in substance[90] and in relief sought,[91] truly is a bootstrapped breach-of-contract claim. A litigant cannot use the generic standard for pleading breach to reach the heightened demand required by a Rule 9(b) claim.[92] Accordingly, Mr. Mikkilineni's attempts to do so are **DISMISSED**.

### 3. The Implied Covenant Claim Fails.

**"Bad faith"** is not a cause of action. Given Mr. Mikkilineni's neighboring contract-based allegations, the Court assumes he meant to accuse PayPal of breaching the implied covenant of good faith and fair dealing. The implied covenant does "inhere[] in all contracts. . . ."[93] But the implied covenant can't be used "to vary a contract's express terms. . . ."[94] In other words, a party summoning the

---

[90] *E.g.*, *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209, at *5 (Del. Super. Ct. Mar. 13, 2017) ("[U]nder Delaware law, a plaintiff cannot bootstrap a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations. Nor can a plaintiff devise a claim for fraud simply by adding [words of fraud] to a complaint." (internal quotation marks and citations omitted)).

[91] *E.g.*, *inVentiv Health Clinical, LLC v. Odonate Therapeutics, Inc.*, 2021 WL 252823, at *8 (Del. Super. Ct. Jan. 26, 2021) ("Under Delaware's pleading standard[s], the damages [allegedly caused by fraud] may not simply rehash the damages allegedly caused by the breach of contract." (internal quotation marks omitted)).

[92] *See, e.g.*, *Firmenich Inc. v. Nat. Flavors, Inc.*, 2019 WL 6522055, at *3 (Del. Super. Ct. Oct. 29, 2019) ("[A] fraud claim only survives if it is based on some conduct distinct from that constituting a breach of contract. . . . For both a breach-of-contract claim and a tort claim to coexist in a single action, the plaintiff must allege that the defendant breached a duty that is independent of the duties imposed by the contract." (cleaned up)).

[93] *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017).

[94] *Buck*, 2021 WL 673459, at *5.

-25-

implied covenant must reveal a "gap" in the subject agreement.[95]  Mr. Mikkilineni,

however, has not pleaded a gap.   Instead, he has (again) "repackage[d]"[96] his failed

breach-of-contract allegations[97] that rested on the express dispute-resolution

provisions in PayPal's user agreement.[98]  A "bad faith" breach of the agreement's

express terms is still a breach of the agreement's express terms.[99]  The implied

covenant claim is thus impermissibly duplicative.[100]

---

[95]  *E.g.*, *Nemec v. Shrader*, 991 A.2d 1120, 1125–26 (Del. 2010); *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005).

[96]  *Buck*, 2021 WL 673459, at *5.

[97]  The economic loss doctrine undercuts Mr. Mikkilineni's lurking breach-of-contract claim for the same reasons it undercut his claims against GoDaddy.

[98]  *See ASB Allegiance Real Est. Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 444–45 (Del. Ch. 2012) ("Notwithstanding the covenant's potentially misleading moniker and decisional references to a culpable mental state, a claim for breach of the implied covenant is a contract claim, requires proof of breach-of-contract elements, and yields contract remedies."), *rev'd on other grounds*, 68 A.3d 665 (Del. 2013); *see also Nemec*, 991 A.2d at 1125–26 ("[O]ne generally cannot base a claim for breach of the implied covenant on conduct authorized by the agreement." (alteration in original) (internal quotation marks omitted)).

[99]  *See Kuroda v. SPJS Holdings, Inc.*, 971 A.2d 872, 888 (Del. Ch. 2009) ("The implied covenant cannot be invoked to override the express terms of the contract. . . . *General allegations of bad faith conduct are not sufficient.*  Rather, the plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract.  Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully." (emphasis added) (citations omitted)).

[100]  *E.g.*, *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, 2018 WL 2727542, at *9 (Del. Ch. June 6, 2018) ("[I]f the contract at issue expressly addresses a particular matter, an implied covenant claim respecting that matter is duplicative and not viable.").

Contrary to Mr. Mikkilineni's belief, the implied covenant's "good faith" component "does not envision loyalty to [a] contractual counterparty. . . ."[101] Despite its name, "the covenant does not establish a free-floating requirement that a party act in some morally commendable sense."[102] And it does not "necessarily require that a party have acted in subjective good faith.[103] It only exists to deter arbitrary or unreasonable conduct that would spoil the fruits of a bargain.[104] Nothing in the complaints, however, indicates that PayPal acted arbitrarily or unreasonably in resolving Mr. Mikkilineni's refund dispute. Based on the complaints, it appears to have applied its adjudicatory discretion neutrally, simply finding that Spark (the seemingly more appropriate target of these allegations) had the better case.[105] Mr. Mikkilineni's criticism of the outcome as unjust does not poke a hole in the

---

[101] *Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 419 (Del. 2013) (emphasis and internal quotation marks omitted), *overruled in part on other grounds by Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 815 n.13 (Del. 2013).

[102] *Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 182–83 (Del. Ch. 2014), *aff'd*, 2015 WL 803053 (Del. Feb. 26, 2015).

[103] *Id.* at 183.

[104] *Dieckman*, 155 A.3d at 367.

[105] *But see, e.g.*, *Airborne Health, Inc. v. Squid Soap LP*, 984 A.2d 126, 146–47 (Del. Ch. 2009) ("When a contract confers discretion on one party, the implied covenant requires that the discretion be used reasonably and in good faith."); *but see also Gerber*, 67 A.3d at 419 ("[W]hat is arbitrary or unreasonable—or conversely[,] reasonable—depends on the parties' original contractual expectations, not a free-floating duty applied at the time of the wrong." (internal quotation marks omitted)).

agreement that must be plugged with the implied covenant.[106]  Accordingly, the "bad

faith" claim—and PayPal as a party—are **DISMISSED**.

### C. THIS COURT LACKS JURISDICTION OVER MR. MIKKILINENI'S CLAIMS AGAINST UPWORK, WHICH OTHERWISE FAIL ON THE MERITS.

#### 1. Mr. Mikkilineni Agreed to Arbitrate His Claims.

Though it studiously recounts the facts of their Justice of the Peace litigation,

Upwork does not argue that Mr. Mikkilineni faces procedural hurdles to challenging

his duty to arbitrate.  Instead, Upwork revisits the arbitration issue on the merits.

That being so, the Court assumes *arguendo* that Mr. Mikkilineni *is not* precluded

procedurally from re-litigating his claims.  Nevertheless, Mr. Mikkilineni *is*

precluded contractually from re-litigating them.  His case lies within the exclusive

jurisdiction of a California arbitrator.

"The public policy of Delaware favors arbitration."[107]  Because of that "strong

public policy," the Court will grant a Rule 12(b)(1) dismissal motion whenever the

---

[106] *See Oxbow Carbon & Mins. Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019) ("Delaware's implied duty of good faith and fair dealing is not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to the contract.  Rather, the implied covenant is an extraordinary legal remedy." (internal quotation marks and citations omitted)); *see also Allen*, 113 A.3d at 183 ("If a contractual gap exists, then the court must determine whether the implied covenant should be used to supply a term to fill the gap.  Not all gaps should be filled.").

[107] *Kuhn v. Diamond State Port Corp.*, 990 A.2d 393, 396 (Del. 2010).

"dispute is one that, on its face, falls within the arbitration clause of the contract."[108] Indeed, the sole question a court confronted with a valid arbitration clause should answer is "whether the parties should be arbitrating at all. . . ."[109] To determine an arbitration clause's validity, the Court starts with the contract's text.[110] An arbitration clause is presumptively valid unless it is ambiguous or does not clearly indicate an intention to arbitrate.[111] Doubt as to the parties' intentions, however, ordinarily is resolved in favor of arbitration.[112] And if the enforceable arbitration clause is "broad in scope," the Court "will defer to arbitration on any issues that touch on contract rights or contract performance" "so far as the series of obligations set forth in the underlying agreement."[113]

Section 14.1 (the "Arbitration Provision") of Upwork's user agreement clearly delimits the scope of arbitrability to all contract-linked claims.

---

[108] *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429 (Del. Ch. 2007) (quoting *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998)).

[109] *Viacom Int'l, Inc. v. Winshall*, 72 A.3d 78, 83 (Del. 2013) (internal quotation marks omitted).

[110] *See Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002) ("The policy that favors alternate dispute resolution mechanisms, such as arbitration, does not trump basic principles of contract interpretation.").

[111] *Kuhn*, 990 A.2d at 397; *see also James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006) ("[A] party cannot be required to submit to arbitration any dispute [that] he has not agreed so to submit." (internal quotation marks omitted)).

[112] *Parfi*, 817 A.2d at 156.

[113] *Id.* at 155–56.

> Claims covered by [the] Arbitration Provision include, but are not limited to, all claims, disputes or controversies arising out of or relating to this Agreement. . . .[114]

Given the Arbitration Provision's breadth, the parties plainly intended to submit all disputes "touching on" Upwork's contractual services to arbitration.[115] A party who did not intend that result could have opted-out; the Arbitration Provision is neither compulsory nor a mandatory condition to contracting with Upwork.[116] Mr. Mikkilineni, though, did not opt-out. To the contrary (and despite his adverse averments) he accepted the entire user agreement.[117] And so, Mr. Mikkilineni's claims—which all revolve around Upwork's user agreement—fall squarely within the Arbitration Provision, depriving this Court of subject matter jurisdiction. Those claims against Upwork are accordingly **DISMISSED**.

To the extent Mr. Mikkilineni is challenging his "opting-in," he misses the mark. An otherwise clear intent to arbitrate will not be invalidated merely because a party did not negotiate the arbitration provision or otherwise participate in its

---

[114] Ex. 1 (D.I. 108) (User Agreement).

[115] *Parfi*, 817 A.2d at 155; *see also Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014) ("Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." (internal quotation marks omitted)).

[116] Ex. 1 § 14.4.4.

[117] Unsworn Aff. of Anh (Amy) Le, Upwork Legal Program Coordinator ¶¶ 6–8 (D.I. 108); Ex. 1 (D.I. 108) (Mr. Mikkilineni's Electronic Acceptance).

drafting.[118] That is because arbitration clauses are governed by familiar principles of contract formation.[119] A contract forms when "there is a manifestation of mutual assent to the exchange and a consideration."[120] And in Delaware, "overt manifestation of assent—not subjective intent—controls the formation of a contract."[121] So, Mr. Mikkilineni's "after-the-fact professed subjective intent" that he didn't actually want to arbitrate is irrelevant.[122] Objectively, he consented to arbitration, and he hasn't marshaled any evidence suggesting that he'd been coerced.

Moreover, to the extent Mr. Mikkilineni believes he has defenses to arbitrating (*e.g.*, Upwork's "delay"), the Court can't assess them. A delay or waiver defense to

---

[118] *See, e.g.*, *AlixPartners v. Mori*, 2019 WL 6327325, at *11 (Del. Ch. Nov. 29, 2019); *Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contractors, Inc.*, 768 A.2d 983, 987 (Del. Super. Ct. 2000). *AlixPartners* and *Hornberger* involved forum selection clauses, but Delaware law "treats forum selection clauses 'in the same spirit' as arbitration clauses; thus, the same general principles apply in determining the scope and level of deference to be given either kind of clause." *ASDS Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, 2011 WL 4552508, at *4 (Del. Ch. Sept. 14, 2011); *see also Nat'l Indus. Grp. (Holding) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 384 n.41 (Del. 2013) ("[A]n arbitration clause is, in effect, a specialized kind of forum-selection clause." (internal quotation marks omitted)).

[119] *E.g.*, *Chemours Co. v. DowDuPont Inc.*, 2020 WL 1527783, at *9 (Del. Ch. Mar. 30, 2020) ("In considering the agreement to arbitrate, general state law contract principles, and not any special rules separate to arbitration agreements, must apply."), *aff'd*, 2020 WL 7378829 (Del. Dec. 15, 2020).

[120] *Eagle Force Holdings, LLC v. Campbell*, 187 A.2d 1209, 1212 (Del. 2018) (internal quotation marks omitted).

[121] *Chemours Co.*, 2020 WL 1527783, at *9 (quoting *Eagle Force*, 187 A.3d at 1229).

[122] *Chemours Co.*, 2020 WL 1527783, at *9 (internal quotation marks omitted).

arbitration is a "procedural" question reserved for the arbitrator.[123]  The Court's only

task here is to determine whether Mr. Mikkilineni's claims fall within the plain

language of the Arbitration Provision.  They do.  Wading through every nit cursorily

picked by Mr. Mikkilineni in his disagreements with the way Upwork undertook its

mediation efforts would, at minimum, counteract the efficiency-based rationale

undergirding Delaware's statutorily-enshrined preference for enforcing arbitration

clauses as written.[124]

### 2. Absent An Arbitration Clause, the Claims Would Fail on the Merits.

Even if the Court humored Mr. Mikkilineni's insistence that he was totally

unaware of, and therefore involuntarily opted-into, the Arbitration Provision,[125] it

would find his claims fail on the merits largely for the same reasons they failed

above.  To reiterate, the economic loss doctrine blocks Mr. Mikkilineni's pursuit of

a negligence claim, as none of his "damages" would be extra-contractual.  More

importantly, he has not pleaded a reasonably conceivable breach-of-contract claim

---

[123] *Viacom Int'l, Inc. v. Winshall,* 2012 WL 3249620, at *12 (Del. Ch. Aug. 9, 2012), *aff'd,* 72 A.3d at 82; *accord CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, 2021 WL 2588905, at *9 (Del. Ch. June 14, 2021).

[124] *See* DEL. CODE ANN. tit. 10, §§ 5702(a), (c) (2020).

[125] In most contexts, there is good reason to question such a protestation.  *See, e.g.*, *Elia v. Hertrich Fam. of Auto. Dealerships, Inc.*, 2014 WL 5410723, at *1 (Del. Oct. 23, 2014) (finding arbitration clause valid where party did not sign it but "proceeded under" the contract anyway); *cf. UBEO Holdings, LLC v. Drakulic*, 2021 WL 1716966, at *11–12 (Del. Ch. Apr. 30, 2021) (finding forum selection clause invalid where party did not read the agreement before signing it *and* the other party took steps to "excerpt" the forum selection clause out of the agreement before closing).

to begin with; he's omitted any discussion of a duty Upwork shirked. Next, he has not pleaded any conduct resembling fraud; his colloquial use of the word "false" in replying to his adversaries' legal contentions and exhibits doesn't suffice. Last, he doesn't propose a gap in the parties' agreements that the implied covenant must fill.

The only claim unique to Upwork is Mr. Mikkilineni's "tort or wrongful interference with contract" theory. But it too is fundamentally flawed. To state a tortious interference with contract claim, a plaintiff must allege, among other things, that the defendant took an intentional and unjustified act that was a significant factor in causing the underlying breach.[126] Mr. Mikkilineni, though, mistakes cause and effect. He has alleged that the freelancer breached the agreement those two alone had *before* Upwork entered the scene.[127] By consequence, Upwork's supposed failure to mitigate that loss arose *after* Mr. Mikkilineni informed it of the freelancer's misappropriations. Taken in tandem, it is not reasonably conceivable that Upwork caused the freelancer's alleged breach.[128] This claim—and Upwork as a party—are **DISMISSED**.

---

[126] *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013).

[127] *E.g.*, Compl. ¶¶ 5.0(d)–(e).

[128] And, even if Upwork could (somehow) be found to have breached an obligation under the agreement between Mr. Mikkilineni and the freelancer alone, a tortious interference claim still would fail. "It is rudimentary that a party to a contract cannot be liable both for breach of that contract and for inducing that breach." *Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 590 (Del. Ch. 1994).

## IV. CONCLUSION

Mr. Mikkilineni has no reasonably conceivable, procedurally-allowed, or contractually-permitted claims against PayPal, GoDaddy, or Upwork. Their motions are **GRANTED** and all the allegations against them are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Paul R. Wallace, Judge